WINKLEPLECK v MICHIGAN VETERANS' FACILITY

Docket No. 137746. Submitted June 8, 1992, at Grand Rapids. Decided August 17, 1992, at 9:10 A.M. Leave to appeal sought.

Eva Winklepleck, individually and as personal representative of the estate of Kenneth Winklepleck, deceased, brought an action in the Court of Claims against the Michigan Veterans' Facility and the State of Michigan, alleging negligence with regard to the decedent's fatal injury while in the care of the veterans' facility, a health facility operated by the state. The defendants moved for summary disposition on the basis of governmental immunity, contending that the veterans' facility is not a hospital within the meaning of MCL 691.1407; MSA 3.996(107), which provides that no immunity is granted to a governmental agency with respect to its ownership or operation of a hospital. The court, Dennis B. Leiber, J., denied the motion. The defendants appealed by leave granted.

The Court of Appeals *held:*

MCL 691.1407(4)(b); MSA 3.996(107)(4)(b) defines "hospital" as a facility offering inpatient, overnight care, and services for observation, diagnosis, and active treatment of an individual with a medical, surgical, obstetric, chronic, or rehabilitative condition requiring the daily direction or supervision of a physician.

In this case, the defendants submitted affidavits and other documentary evidence in support of their contention that, although the Michigan Veterans' Facility provides services closely resembling those provided in a nursing home, it does not provide medical treatment that requires the daily direction or supervision of a physician and therefore is not a hospital for purposes of the statute. The plaintiff's response to the defendants' motion did not raise any genuine issue of material fact with respect to this contention. The trial court therefore erred in denying summary disposition for the defendants.

Reversed and remanded for entry of an order of summary disposition for the defendants.

REFERENCES

Am Jur 2d, Municipal, County, School, and State Tort Liability §§ 61 *et seq.*

Immunity of state or governmental unit or agency from liability for damages in tort in operating hospital, 25 ALR2d 203.

Governmental Immunity — Hospitals — Michigan Veterans' Facility.

   The Michigan Veterans' Facility, a health facility operated by the state for the benefit of indigent veterans, may claim governmental immunity from tort liability; the facility is not a hospital within the meaning of the statute that denies governmental immunity to hospitals owned or operated by governmental agencies (MCL 36.1 et seq., 691.1407[4][b]; MSA 4.871 et seq., 3.996[107][4][b]).

*Thomas, Garvey, Garvey & Sciotti, P.C.* (by *Christopher R. Sciotti*), for the plaintiff.

*Frank J. Kelley*, Attorney General, *Thomas L. Casey*, Solicitor General, and *Stewart H. Freeman* and *Brian D. Devlin*, Assistant Attorneys General, for the defendants.

Before: SHEPHERD, P.J., and CONNOR and M. F. SAPALA,* JJ.

SHEPHERD, P.J. Plaintiff's decedent, Kenneth Winklepleck, was a resident at the Michigan Veterans' Facility in Grand Rapids. He suffered from multiple sclerosis. In May 1987, as a nurse was lifting Winklepleck from his bed with a hydraulic device, he was dropped and injured his head. He died in June 1987. Plaintiff sued the veterans' facility and the State of Michigan. Defendants moved for summary disposition under MCR 2.116(C)(7) and (10) on the ground that defendant is immune from liability under the governmental immunity statute, MCL 691.1401 *et seq.*; MSA 3.996(101) *et seq.* Defendants argued that plaintiff's reliance on the "public hospital exception" to governmental immunity was misplaced because the Michigan Veterans' Facility is not a hospital

---

* Recorder's Court judge, sitting on the Court of Appeals by assignment.

within the meaning of MCL 691.1407(4)(b); MSA 3.996(107)(4)(b). The trial court found that the facility was a hospital as defined in the governmental immunity statute and denied the motion. Defendants appeal by leave granted. We reverse and remand for entry of an order granting summary disposition to defendants.

The governmental immunity statute provides in pertinent part:

> (4) This act does not grant immunity to a governmental agency with respect to the ownership or operation of a hospital or county medical care facility or to the agents or employees of such hospital or county medical care facility. As used in this subsection:
>
> *    *    *
>
> (b) "Hospital" means a facility offering inpatient, overnight care, and services for observation, diagnosis, and active treatment of an individual with a medical, surgical, obstetric, chronic, or rehabilitative *condition requiring the daily direction or supervision of a physician.* The term does not include a hospital owned or operated by the department of mental health or a hospital operated by the department of corrections. [MCL 691.1407; MSA 3.996(107). Emphasis added.]

Plaintiff's complaint implicated the foregoing "public hospital exception." Defendants moved for summary disposition, arguing that the facility is not a hospital but rather is a unique institution, akin to a nursing home, operated by the state under statutory authority to provide housing and minimal medical care to the state's indigent and disabled military veterans. Defendants pointed out that the definition of "hospital" in the Public Health Code, MCL 333.1101 *et seq.*; MSA 14.15(1101) *et seq.*, is identical to that in the

governmental immunity statute with one exception not relevant here.[1]

The Public Health Code defines a "health facility or agency" to include a hospital, a home for the aged, or a nursing home, among other things. MCL 333.20106(1); MSA 14.15(20106)(1). A "nursing home" is defined in the Public Health Code as follows:

> "Nursing home" means a nursing care facility, including a county medical care facility, *but excluding a hospital or a facility created by Act No. 152 of the Public Acts of 1885, as amended, being sections 36.1 to 36.12 of the Michigan Compiled Laws,* that provides organized nursing care and medical treatment to 7 or more unrelated individuals suffering or recovering from illness, injury, or infirmity. Nursing home does not include a unit in a correctional facility that is operated by the department of mental health. [MCL 333.20109(1); MSA 14.15(20109)(1). Emphasis added.]

Section 1 of 1885 PA 152 created the Michigan Veterans' Facility. See MCL 36.1; MSA 4.871. Section 11(1) of the act describes eligibility for admission to the facility and provides in part that certain veterans

> who are disabled by disease, wounds, or otherwise, and who have no adequate means of support, and by reason of their disability are incapable of earning their living and who would be otherwise dependent upon public or private charity, shall be entitled to be admitted to a facility, subject to such

---

[1] The governmental immunity statute provides: "The term does not include a hospital owned or operated by the department of mental health or a hospital operated by the department of corrections." MCL 691.1407(4)(b); MSA 3.996(107)(4)(b). The Public Health Code provides: "The term does not include a hospital licensed or operated by the department of mental health." MCL 333.20106(5); MSA 14.15(20106)(5).

rules as promulgated by the board of managers pursuant to Act No. 306 of the Public Acts of 1969, being sections 24.201 to 24.315 of the Michigan Compiled Laws, to govern the admission of applicants to the facilities. [MCL 36.11(1); MSA 4.878(1).]

Defendants supported their motion for summary disposition with the affidavits of three public health officials. Walter S. Wheeler, III, signed an affidavit in which he stated that, in his capacity as chief of the Bureau of Health Facilities for the Michigan Department of Public Health, he has never considered the Michigan Veterans' Facility a hospital. Rather, he considers it a nursing home operating without a license under the exclusion set forth in MCL 333.21711(3); MSA 14.15(21711)(3).[2] If the facility were operating as a hospital, Wheeler would be compelled to recommend a licensing enforcement action. Wheeler stated that he had never done so.

The Wheeler affidavit did more than merely state his conclusions. Wheeler also explained that the Bureau of Health Facilities considers the veterans' facility to be providing "nursing care and services consistent with those described in [MCL 333.21715; MSA 14.15(21715)]."

MCL 333.21715; MSA 14.15(21715) provides:

(1) A nursing home shall provide:

\* \* \*

---

[2] MCL 33.21711(3); MSA 14.15(21711)(3) provides:

A person shall not purport to provide formal or informal nursing care services of the kind normally provided in a nursing home without obtaining a license as provided in this article. This subsection does not apply to a hospital or a facility created by Act No. 152 of the Public Acts of 1885, as amended, being sections 36.1 to 36.12 of the Michigan Compiled Laws.

See also MCL 333.20109(1); MSA 14.15(20109)(1), which excludes the veterans' facility from the definition of "nursing home."

*(b) A program of planned and continuing medical care under the charge of physicians.*

(2) Nursing care and medical care shall consist of services given to individuals who are subject to prolonged suffering from illness or injury or who are recovering from illness or injury. *The services* shall be within the ability of the home to provide and *shall include the functions of medical care such as diagnosis and treatment of an illness;* nursing care via assessment, planning, and implementation; evaluation of a patient's health care needs; *and the carrying out of required treatment prescribed by a physician.* [Emphasis added.]

Thomas C. Lindsay served as "Commandant" or chief executive officer of the Michigan Veterans' Facility from September 1990. In his affidavit he stated, among other things, that the facility provides beds for 763 members, and that the "daily direction and supervision of the medical needs of the members is carried out by a staff of [178] nurses. The members' program of planned and continuing medical care is under the charge of [6] staff physicians."

Lindsay's affidavit further states:

11. The Michigan Veterans' Facility provides three levels of care:

*Skilled Nursing:* Serves the individual with severe disabilities requiring continuous nursing care and supervision.

*Basic Nursing:* Serves the individual with moderate disabilities.

*Domiciliary Care:* Serves the individual who needs very little nursing care but has some limitations which require a structured environment.

12. None of the three levels of care described above is suitable, to my knowledge, to a person with a medical, surgical, obstetric, chronic, or

rehabilitative condition requiring the daily direction or supervision of a physician.

13. Should a Michigan Veterans' Facility member's condition become sufficiently acute that the daily direction or supervision of a physician is required, the member is transferred to a hospital.

14. All admittees to the Michigan Veterans' Facility must meet the criteria of one of these levels of care as a prerequisite to membership.

Upon admission, a history and physical is conducted by a physician and is submitted to the VA, indicating the individual's appropriate level of care.

On an annual basis, a history and physical is conducted attesting to a continuation of one of the three levels of care.

To my knowledge, the Michigan Veterans' Facility has never submitted an application for nor received any reimbursement from any source for providing a level of care greater than these three levels. [Emphasis in original.]

The third affidavit was that of Donald R. Barbachym, D.O., which states in pertinent part:

3. My duties at the Michigan Veterans' Facility are that of Medical Director.

4. The Michigan Veterans' Facility does not treat members with a condition requiring the daily direction or supervision of a physician.

5. Michigan Veterans' Facility members are provided with a planned and continuing medical care under the charge of physicians consistant [sic] with that described in the Public Health Code, MCL 333.21715 [MSA 14.15(21715)]:

* * *

6. The physicians at Michigan Veterans' Facility visit the members and assess their medical needs on average once every thirty days.

7. The Michigan Veterans' Facility does not admit members with medical, surgical, obstetric,

chronic or rehabilitative conditions requiring the daily direction or supervision of a physician, nor are such members, after developing such a condition, permitted to remain in the Facility.

8. I have reviewed the complete medical file maintained by the Michigan Veterans' Facility on Kenneth Winklepleck.

9. I have reviewed these documents and have concluded that at no time during his residence at the Michigan Veterans' Facility did Mr. Winklepleck receive treatment at the Facility for a medical, surgical, chronic, or rehabilitative condition requiring the daily supervision of a physician.

10. I base my conclusion on the following factors:

a. The patient was in the latter phase of his multiple sclerosis, since his history confirms that he first began to note symptoms in 1973. Therefore, in 1987 Mr. Kenneth Winklepleck was in his 15th year of his disease.

b. Mr. Winklepleck was seen by the Michigan Veterans' Facility physicians infrequently, approximately once every thirty days.

c. Mr. Winklepleck's initial examination upon his entry to membership in the Facility indicated that he had a medical history of multiple sclerosis, a slowly progressive central nervous system disease characterized by disseminated patches of demyelination in the brain and spinal cord, resulting in multiple and varied neurologic symptoms and signs, usually with remissions and exacerbations. There is no specific therapy for the disease, and nothing, in the absence of an acute attack, which could be described as an "active treatment" of the condition.

Plaintiff responded below, as she has in this Court, with medical records that she claims "show . . . that Kenneth Winklepleck was under the daily 'supervision or direction of a physician.'" Plaintiff also contends that the affidavits submitted by defendants provide no evidence that the

veterans' facility does not satisfy the governmental immunity statute's definition of "hospital." Also, plaintiff argues that the statutory definition is met by the following description of services found in the facility's "Member Guide Book":

> Skilled nursing care is provided in this new, modern 343-bed unit. An organized program of medical care is available on a regular basis designed to meet the individual's need. The unit is staffed with doctors, nurses, and technicians to provide for the medical needs of the members.
>
> The building also houses the business offices, kitchen and dining facilities, (including provisions for special diets) doctors' and dentists' offices, clinics, x-ray, medical laboratory, occupational and physical therapy, chapel, and chaplains offices.
>
> The Rankin Building was built in 1947, remodeled in 1963 and again in 1975. Here, the member is provided medical care on a less intensive basis than in the main building.
>
> Besides the medical care provided by doctors, nurses, and aides, physical therapy and occupational therapy are available for the member.

It is true that the above services are also offered to patients in hospitals. This, however, does not mean that defendant is a facility offering care to individuals with conditions requiring the daily supervision of physicians, one of the essential statutory tests for determining whether defendant is a hospital. In denying defendants' motion for summary disposition, the trial court ruled:

> I am of the opinion that as a matter of fact and of law that these circumstances compel this Court to determine that the Michigan Veterans' Facility is a hospital within the meaning of [MCL 691.1407(4)(b); MSA 3.996(107)(4)(b)], and that the services performed to the residents are—and specifically *this resident* who in this case was afflicted

with a chronic condition, *was under the direct and daily control of a physician, even though the physician himself or herself did not personally provide the medical care and attention* to the resident.

Accordingly, this Court is of the opinion that, since the Michigan Veterans Facility is a hospital, it is not exempt from liability and, therefore, the motion for summary disposition brought by the defendnat [sic] is respectfully denied.

I've indicated also that I would proceed under analysis as a (C) (10) motion . . . . [Emphasis added.]

The court then indicated, without elaboration, that denial of the motion was also correct under MCR 2.116(C)(7). We need not address the effect of the different standard applied under this subrule in light of our conclusion that the motion pursuant to MCR 2.116(C)(10) should have been granted.

Summary disposition is proper under MCR 2.116(C)(10) where, except for damages, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. A motion under subrule C(10) tests the factual support for a claim. *Hutchinson v Allegan Co Bd of Rd Comm'rs (On Remand),* 192 Mich App 472, 480; 481 NW2d 807 (1992). Such a motion must be supported by affidavits, depositions, admissions, or other documentary evidence, MCR 2.116(G)(3), and must specifically identify the issues with respect to which the moving party believes there is no genuine issue of material fact, MCR 2.116(G)(4). When a motion under MCR 2.116(C)(10) is so made and supported, the responding party may not rest upon the mere allegations or denials of the pleadings, but must meet the motion with evidence setting forth the specific facts showing that there is a genuine issue for trial. MCR 2.116(G)(4); *Hutchinson, supra,* p 481.

Giving the benefit of reasonable doubt to the nonmovant, the court must determine whether a record might be developed that would leave open an issue upon which reasonable minds may differ. *Hutchinson, supra,* pp 480-481. Although courts are liberal in finding a genuine issue of material fact, if the nonmovant fails to meet its burden of showing that a genuine issue of material fact exists, then judgment for the moving party shall be entered if appropriate. MCR 2.116(G)(4); *Prysak v R L Polk Co,* 193 Mich App 1, 6; 483 NW2d 629 (1992).

This case presents essentially three tasks for this Court (the trial court was presented with the same tasks): (1) statutory interpretation, to the extent necessary, of MCL 691.1407(4); MSA 3.996(107)(4), and in particular of the term, "requiring the daily direction or supervision of a physician"; (2) ascertainment of whether there exists a genuine issue of material fact; and (3) application of the statute to the uncontested facts to determine whether the Michigan Veterans' Facility is a "hospital" within the meaning of MCL 691.1407(4); MSA 3.996(107)(4).

We find the second of these three tasks most important to the disposition of this case. The critical question before the court was whether there was a genuine issue of material fact regarding the status of defendant Michigan Veterans' Facility. Bound up with this was the question of the meaning of the term "condition requiring the daily direction or supervision of a physician." Defendants had argued that the facility did not offer services to individuals with a "condition requiring the daily direction or supervision of a physician" and that the facility did not, therefore, meet the statutory definition of "hospital." The trial court rejected this argument, found that Mr. Winkle-

pleck's care was subject to the daily direction or supervision of a physician, and ruled that the facility was a hospital.

Although the trial court would have been the finder of fact had this Court of Claims action gone to trial, the task of determining whether a genuine issue of material fact existed should not have become a minitrial. Thus, to the extent the trial court made findings of fact in resolving the motion for summary disposition, it erred. *In re Peterson Estate,* 193 Mich App 257, 261; 483 NW2d 624 (1992). Instead of "finding as a matter of fact and law" that the facility was, or was not, a hospital, the trial court should have confined itself to deciding whether defendants' motion was properly supported, and, if so, whether plaintiff's response raised a genuine issue of material fact.

In this case, the contested issue involved the type of care offered by the facility. The governmental immunity statute excepts a facility from immunity if it is a "hospital," i.e., if it offers (1) inpatient, overnight care, and (2) services for observation, diagnosis, and active treatment of an individual, (3) with a medical, surgical, obstetric, chronic, or rehabilitative condition, (4) requiring the daily direction or supervision of a physician. MCL 691.1407(4)(b); MSA 3.996(107)(4)(b).

The question raised by defendants' motion was whether plaintiff could come forward with any evidence that the facility offered care and services to an individual with a "condition requiring the daily direction or supervision of a physician." Our review of the record indicates that plaintiff's proffered evidence does not raise a genuine issue of material fact with regard to this question. We conclude that the trial court should have determined that defendants were entitled to summary disposition as a matter of law. MCR 2.116(C)(10).

The medical services described in the Member Guide Book are not inconsistent with those provided by a nursing home. MCL 333.21715; MSA 14.15(21715). The trial court, in its opinion from the bench, noted that Mr. Winklepleck "was afflicted with a chronic condition which required treatment on a regular and consistent basis," and further concluded that the "nurses providing [the daily care at the facility] act under the direct supervision of a doctor or a physician associated with these premises." Although MCL 333.21715; MSA 14.15(21715) directs that a nursing home *shall* provide "a program of planned and continuing medical care under the charge of physicians," and that "[n]ursing care and medical care . . . shall include . . . diagnosis and treatment of an illness . . . and the carrying out of required treatment prescribed by a physician," the trial court seemed to reason that any physician-supervised care at the veterans' facility rendered the facility a hospital. It is one thing to have physicians available or on call on a daily basis for the benefit of those who periodically need the attention of a physician (as is the case in a nursing home). It is quite another thing to offer care to those whose conditions require the daily direction or supervision of a physician. Furthermore, that the activities of nurses might be under the daily supervision of physicians is not controlling. Under the statute, it is the patients'. conditions that must require daily supervision of a physician before a facility meets the test of being a hospital.

It further appears that the trial court concluded that the records proffered by plaintiff established that Mr. Winklepleck was in fact suffering from a condition requiring the daily direction or supervision of a physician, and that the facility was therefore a hospital by virtue of the fact that it

was offering services to Mr. Winklepleck. The records proffered do not support this determination.

For example, exhibit B of plaintiff's brief on appeal consists of several pages of "doctor's progress notes," which establish that between December 1982 and May 1987, Mr. Winklepleck was seen by a physician approximately forty-nine times, or on average less than once a month. In 1986, Mr. Winklepleck was seen twice in January, three times in April, and then not seen by a physician again until July 24, 1986. He was not seen after that until October 10, 1986, and then was seen next on December 2, 1986. Plaintiff attaches an exhibit D, captioned "Physician's Orders." There are approximately 120 entries spanning the dates of December 1982 through May 1987. Plaintiff also submitted a group of documents labeled "member's progress notes" (exhibit F), with much more frequent entries.

Plaintiff proffers no expert testimony to the effect that Mr. Winklepleck suffered from a condition requiring the daily direction or supervision of a physician. Plaintiff therefore has not contradicted the affidavit of Dr. Barbachym stating that Mr. Winklepleck did not suffer from, or receive treatment for, such a condition. Similarly, plaintiff has not rebutted Dr. Barbachym's statement that there is no "active treatment" for multiple sclerosis, absent an acute attack.

In summary, plaintiff's documents establish no more than that Mr. Winklepleck received medical care, including visitation by physicians, prescription medication, minor surgery and x-rays at the facility's clinic, and daily nursing care. In light of plaintiff's failure to come forward with any evidence that Mr. Winklepleck suffered from a condi-

tion requiring the daily direction or supervision of a physician, we conclude that the trial court erred in denying defendants' motion. We also note that the trial court's apparent broad construction of the governmental immunity statute's definition of hospital, to include all facilities that provide nursing care at the direction of physicians, contravenes the rule that exceptions to governmental immunity are to be narrowly construed. *Wade v Dep't of Corrections,* 439 Mich 158, 166; 483 NW2d 26 (1992).

We further observe that the trial court unduly focused on the treatment of one person. The issue in the case was whether the facility offers care to individuals with conditions requiring the daily direction and supervision of a physician—not whether a particular patient had deteriorated to such a point but had not yet been transferred to a hospital. Again, we emphasize that there was no evidence that Mr. Winklepleck's condition had so deteriorated. Even if it had, the facility does not unwittingly become transformed into a hospital for the brief interval that one patient is awaiting transfer elsewhere. Although plaintiff did not advocate such a position, the trial court's emphasis on the condition of one patient necessitates our comment that the focus of attention in determining whether the facility is a hospital must be on the services offered by the facility and not on the condition of one patient.

Reversed and remanded for entry of an order granting summary disposition in favor of defendants.