JAMIESON v LUCE-MACKINAC-ALGER-SCHOOLCRAFT
DISTRICT HEALTH DEPARTMENT

Docket No. 142551. Submitted May 6, 1992, at Marquette. Decided
February 1, 1993, at 9:10 A.M. Leave to appeal sought.

Russell Jamieson, as personal representative of the estate of
Beatrice Jamieson, deceased, brought an action in the Luce
Circuit Court against the Luce-Mackinac-Alger-Schoolcraft Dis-
trict Health Department, J. Terrian, M.D., Rose Hendrickson,
R.N., and others, alleging that the decedent's death was proxi-
mately caused by the failure of the defendants to diagnose and
treat the decedent's lung cancer. The claim against the health
department alleged malpractice and negligence, while the
claims against Terrian and Hendrickson, employees of the
health department, alleged malpractice and gross negligence.
The court, Charles H. Stark, J., granted summary disposition
for the health department on the basis of governmental immu-
nity, and granted summary disposition for Terrian and Hen-
drickson on the basis that they were immune from liability
unless guilty of wanton and wilful misconduct and that the
plaintiff had failed to allege such conduct. The plaintiff ap-
pealed.

The Court of Appeals *held:*

1. By statute, governmental agencies are immune from tort
liability arising out of the exercise or discharge of a govern-
mental function unless the agency or function is exempted by
statute from the general grant of immunity. Although there
exists an exception to statutory immunity with respect to
hospitals and county medical care facilities, defendant district
health department does not own a hospital and is not a county
medical care facility within the meaning of the statutory
definition. Accordingly, the statutory exception to the grant of
general immunity does not apply, and the trial court properly

REFERENCES

Am Jur 2d, Hospitals and Asylums § 20; Negligence § 259; Pleading
§§ 111, 381.

Immunity from liability for damages in tort of state or governmen-
tal unit or agency in operating hospital. 25 ALR2d 203 (sec. 17
superseded by Liability for wrongful autopsy, 18 ALR4th 858).

granted summary disposition for the district health department.

2. The Public Health Code provides that local health officers and employees are not personally liable for injuries arising out of the performance of health department functions except for wanton and wilful misconduct. Wanton and wilful misconduct involves conduct that shows an intent to harm or such an indifference to whether harm will result as to be the equivalent of a willingness that it should. Because the plaintiff pleaded only gross negligence, which requires only a reckless lack of concern for whether an injury would result, the plaintiff's pleadings failed to allege the necessary wanton and wilful misconduct. Accordingly, the trial court properly held that Terrian and Hendrickson were immune from liability.

Affirmed.

McDONALD, J., dissenting, stated that the order of summary disposition in favor of defendants Terrian and Hendrickson should be reversed because the plaintiff's pleadings were sufficient to plead a cause of action for wilful and wanton misconduct against them and there exists a question of fact whether they were guilty of such misconduct.

1. TORTS — GOVERNMENTAL IMMUNITY — DISTRICT HEALTH DEPARTMENTS — COUNTY MEDICAL CARE FACILITIES.

A district health department is not a county medical care facility within the meaning of the hospital and county medical care facility exception to statutory immunity; a district health department that does not own or operate a hospital is immune from tort liability arising out of its exercise or discharge of a governmental function (MCL 691.1407[1], 691.1407[4]; MSA 3.996[1], 3.996[4]).

2. PLEADINGS — WANTON AND WILFUL MISCONDUCT — GROSS NEGLIGENCE — LOCAL HEALTH EMPLOYEES — GOVERNMENTAL IMMUNITY.

Pleadings alleging gross negligence and conduct so reckless as to demonstrate a substantial lack of concern for whether an injury would result is not sufficient to plead wanton and wilful misconduct within the meaning of the provision providing local health department officers and employees immunity from personal liability for damages arising out of the performance of health department functions (MCL 333.2465[2]; MSA 14.15[2465][2]).

*Kelman, Loria, Downing, Schneider & Simpson* (by *Thomas M. McGuire*), for the plaintiff.

*McGraw, Borchard & Martin, P.C.* (by *Patrick J. McGraw*), for the Luce-Mackinac-Alger-Schoolcraft District Health Department.

*Stroup, Johnson & Tresidder, P.C.* (by *Stephen J. Tresidder*), for J. Terrian.

*Kendricks, Bordeau, Adamini, Keefe, Smith & Girard, P.C.* (by *William R. Smith*), for Rose Hendrickson.

Before: GRIFFIN, P.J., and WEAVER and McDONALD, JJ.

GRIFFIN, P.J. Plaintiff, Russell Jamieson, personal representative of the estate of Beatrice Jamieson, deceased, appeals as of right an order of the Luce Circuit Court granting summary disposition in favor of defendants, Luce-Mackinac-Alger-Schoolcraft District Health Department, J. Terrian, M.D., and Rose Hendrickson, R.N. We affirm and hold that the Luce-Mackinac-Alger-Schoolcraft District Health Department is neither a hospital nor a county medical care facility and is therefore immune from tort liability pursuant to the governmental immunity act, MCL 691.1407; MSA 3.996(107). We further hold that plaintiff's complaint fails to allege "wanton and wilful misconduct," MCL 333.2465(2); MSA 14.15(2465)(2), on the part of the individual defendants, J. Terrian, M.D., and Rose Hendrickson, R.N.

I

The present case arises from defendants' alleged failure to diagnose promptly and treat the decedent's lung cancer. The decedent was first seen at Luce-Mackinac-Alger-Schoolcraft District Health Department on September 23, 1987, by defendant

Hendrickson. The purpose of the visit to the health department was the decedent's concern over a positive tuberculin skin test that she had received as part of a preemployment physical. Pursuant to the health department program, the decedent was seen without charge and was provided standard services for her condition.

The tuberculin skin test is a screening device and not a diagnostic test. A positive reaction to the procedure indicates that a person has been exposed to tuberculosis at some time in the past, but does not identify the type of exposure or whether the person is suffering from active tuberculosis. Because the decedent had previous tuberculin skin tests that had been negative, she was considered to be a recent converter for purposes of assessing her risk of developing active tuberculosis. Pursuant to the standard protocol of the health department for similarly situated exposed tuberculin patients, the decedent underwent a treatment plan that included preventive chemotherapy, isoniazid and vitamin $B_6$, and a routine chest x-ray. Defendant Terrian ordered the chest x-ray and received a radiologist report that, although negative for tuberculosis, included the following statement:

> Rounded density left mid lung with central lucency. The appearance is most likely due to spuriously superimposed normal structures but other causes cannot be absolutely excluded at this time. Progress PA and slight oblique PA views suggested in further evaluation. Otherwise negative. No prior films available for comparison.

Doctor Terrian wrote on the report the following notation: "Note—neg. chest." Although the radiologist report had indicated "other causes cannot be absolutely excluded at this time," Dr. Terrian

ordered no further investigation in 1987. Two years later, in December 1989, a subsequent chest x-ray revealed a large mass in the decedent's left lung that was later diagnosed as cancerous. On April 2, 1990, the decedent died as a result of the cancerous condition.

Russell Jamieson brought the present action alleging malpractice and negligence against defendant Luce-Mackinac-Alger-Schoolcraft District Health Department and malpractice and gross negligence against defendants Terrian and Hendrickson.

The Honorable Charles H. Stark granted summary disposition in favor of defendants. Judge Stark ruled that because of the lack of either a physician-patient or a nurse-patient relationship with regard to cancer detection and treatment, Terrian and Hendrickson did not owe a duty to the decedent to diagnose and treat the cancer. Judge Stark further ruled that the Luce-Mackinac-Alger-Schoolcraft District Health Department was a governmental agency entitled to tort immunity pursuant to the governmental immunity statute, MCL 691.1407; MSA 3.996(107), and that Terrian and Hendrickson were entitled to summary disposition on the ground that these defendants are not liable under the "wanton and wilful misconduct" exception.

It is not necessary for our disposition to resolve plaintiff's first issue on appeal. Assuming without deciding the existence of requisite physician-patient and nurse-patient relationships, we conclude that the department, Terrian, and Hendrickson were all entitled to summary disposition.

II

Subject to certain narrowly drawn exceptions,

the governmental immunity act grants broad tort immunity to governmental agencies:

> Except as otherwise provided in this act, all governmental agencies shall be immune from tort liability in all cases wherein the government agency is engaged in the exercise or discharge of a governmental function. Except as otherwise provided in this act, this act shall not be construed as modifying or restricting the immunity of the state from tort liability as it existed before July 1, 1965, which immunity is affirmed. [MCL 691.1407(1); MSA 3.996(107)(1).]

Plaintiff acknowledges this grant of immunity, but asserts liability against the Luce-Mackinac-Alger-Schoolcraft District Health Department under the "hospital or county medical care facility" exception:

> This act does not grant immunity to a governmental agency with respect to the ownership or operation of a hospital or county medical care facility or to the agents or employees of such hospital or county medical care facility. As used in this subsection:
>
> (a) "County medical care facility" means that term as defined in section 20104 of the public health code, Act No. 368 of the Public Acts of 1978, being section 333.20104 of the Michigan Compiled Laws.
>
> (b) "Hospital" means a facility offering inpatient, overnight care, and services for observation, diagnosis, and active treatment of an individual with a medical, surgical, obstetric, chronic, or rehabilitative condition requiring the daily direction or supervision of a physician. The term does not include a hospital owned or operated by the department of mental health or a hospital operated by the department of corrections. [MCL 691.1407(4); MSA 3.996(107)(4).]

A "county medical care facility" is defined in MCL 333.20104; MSA 14.15(20104) as

> a *nursing care facility,* other than a hospital long-term care unit, which provides organized nursing care and medical treatment to 7 or more unrelated individuals who are suffering or recovering from illness, injury, or infirmity and *which is owned by a county or counties.* [Emphasis added.]

After thorough review, we conclude that (1) defendant district health department does not own or operate a nursing care facility, and (2) any facilities owned or operated by the district health department are not owned by Luce, Mackinac, Alger, and Schoolcraft Counties. We therefore conclude that the governmental immunity exception with respect to the ownership or operation of a county medical care facility does not apply to defendant Luce-Mackinac-Alger-Schoolcraft District Health Department.

Defendant district health department submitted below uncontroverted documentary evidence establishing that it does not operate a facility wherein aged or infirm patients receive long-term inpatient care. It does not have a building or any beds for the care of overnight patients. Therefore, it does not operate a nursing home as the term is commonly understood:

> A private *residential institution* equipped for care for persons unable to look after themselves, as the aged or chronically ill. [Emphasis added. *The Random House Dictionary of the English Language,* Second Unabridged Edition.]

Similarly, *Webster's Ninth New Collegiate Dictionary* defines a nursing home as:

> A privately operated establishment where main-

tenance and personal or nursing care are provided for persons (as the aged or the chronically ill) who are unable to care for themselves properly.

Because a "nursing home" is statutorily defined by the Public Health Code as a "nursing care facility," MCL 333.20109(1); MSA 14.15(20109)(1), we view the terms as synonymous. On this issue, we agree with the following ruling made by Circuit Judge Stark:

> Although the resourceful showing of overlapping definitions is interesting, the legislative history supports the idea that the Legislature did not have in mind an exception for a District Health Department unless, perhaps, they truly ran a nursing home. Plaintiff's offer of proof simply cannot make LMAS [Luce-Mackinac-Alger-Schoolcraft] a "county medical care facility" or a "nursing care facility" in any of the usual senses of that phrase. MCL 691.1407(4) does not apply.

We also agree with defendant district health department that the statutory framework and administrative regulation under which district health departments are created and controlled are fundamentally different than the statutes and regulations governing "county medical care facilities." Defendant district health department in its brief articulates this distinction as follows:

> The latter term [county medical care facility] is a species of "health facility" under MCLA 333.20106(1)(c) [MSA 14.15(20106)(1)(c)], and as such, it must be licensed and can only be established, like a hospital, pursuant to a "certificate of need" under [former] MCLA 333.22113 [MSA 14.15(22113), now MCL 333.22209; MSA 14.15(22209)]. LMAS on the other hand, is a "district health department," which is a wide-ranging

local government department. It is not established pursuant to a finding of need but under a compulsory statute. Under MCLA 333.2413 [MSA 14.15(2413)], every county in the state must either join a district health department or set up an independent county health department of its own. Once established, the district or county health department is not primarily a care-giver, but an administrative agency. It has authority, for example, to remove dangerous buildings, MCLA 333.2455 [MSA 14.15(2455)], or to control the placement of cemeteries, MCLA 333.2458 [MSA 14.15(2458)]. Furthermore, a department of the county government cannot properly be said to be "owned by a county or counties" in the same sense that a specific hospital or similar facility might be. Although the statutory scheme has changed a bit in the interim, the Attorney General concluded in OAG 1947-1948, No. O-5328, p 145 (January 8, 1947), that the county governments do not have general supervisory power over the district health departments; that belongs belongs [sic] primarily to the state. In short, there is no reason to believe that the Legislature meant to include county or district health departments, such as LMAS, when it waived immunity for a "county medical care facility."

We agree with this analysis and hereby adopt it as our own. Additionally, although not argued by the plaintiff, we also conclude that the Luce-Mackinac-Alger-Schoolcraft District Health Department does not own or operate a "hospital." See *Winklepleck v Michigan Veterans' Facility,* 195 Mich App 523; 491 NW2d 251 (1992).

Finally, we note that the apparent legislative purpose behind the hospital and county medical care facility exception to governmental immunity was to correct the inequity noted in *Hyde v University of Michigan Bd of Regents,* 426 Mich 223, 244-246; 393 NW2d 847 (1986), whereby persons

injured by identical conduct in public and private facilities have different rights of recovery. The rationale for this exception applies to public hospitals and public nursing homes, but has no application to statutorily mandated agencies such as district health departments. Because no exception to the broad grant of governmental immunity is applicable, we affirm the summary disposition entered in favor of Luce-Mackinac-Alger-Schoolcraft District Health Department.

### III

Plaintiff also appeals the grant of summary disposition to Terrian and Hendrickson. Plaintiff notes that the governmental immunity statute does not protect the actions of individuals amounting to "gross negligence."[1] MCL 691.1407(2)(c); MSA 3.996(107)(2)(c). Under this subsection, "gross negligence" is defined as "conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results."[2] Plaintiff's complaint

---

[1] Unlike *Malcolm v City of East Detroit,* 437 Mich 132; 468 NW2d 479 (1991), this case does not concern the common-law definition of "gross negligence," but rather a statutory definition of the term. Also see *Pavlov v Community Emergency Medical Service, Inc,* 195 Mich App 711; 491 NW2d 874 (1992).

[2] MCL 691.1407(2); MSA 3.996(107)(2) states in pertinent part:

> Except as otherwise provided in this section, and without regard to the discretionary or ministerial nature of the conduct in question, each officer and employee of a governmental agency, each volunteer acting on behalf of a governmental agency, and each member of a board, council, commission, or statutorily created task force of a governmental agency shall be immune from tort liability for injuries to persons or damages to property caused by the officer, employee, or member while in the course of employment or service or volunteer while acting on behalf of a governmental agency if all of the following are met:
>
> * * *
>
> (c) The officer's employee's, member's, or volunteer's conduct

alleges that Terrian and Hendrickson acted with "gross negligence" as the term is statutorily defined. Plaintiff argues that Terrian and Hendrickson are afforded no immunity protection for gross negligence.

We disagree with plaintiff's premise that "gross negligence" is the immunity standard to apply to those individual defendants. Under the facts of this case, a statute more specific than the general governmental immunity act applies to defendants Terrian and Hendrickson. See, e.g., *Baxter v Gates Rubber Co,* 171 Mich App 588; 431 NW2d 81 (1988). As employees of a local health department, Terrian and Hendrickson are afforded the following supplemental immunity provided by the Public Health Code:

> A local health officer or an employee or representative of a local health department is not personally liable for damages sustained in the performance of local health department functions, *except for wanton and wilful misconduct.* [MCL 333.2465(2); MSA 14.15(2465)(2).]

In *Burnett v City of Adrian,* 414 Mich 448, 455; 326 NW2d 810 (1982), the Supreme Court defined "willful and wanton misconduct" as follows:

> [W]illful and wanton misconduct is made out only if the conduct alleged shows an intent to harm or, if not that, such indifference to whether harm will result as to be the equivalent of a willingness that it does. Willful and wanton misconduct is not, as the *Gibbard* [v *Cursan,* 225 Mich 311; 196 NW 398 (1923)] Court observed, a high degree of carelessness.

---

does not amount to gross negligence that is the proximate cause of the injury or damage. As used in this subdivision, "gross negligence" means conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results.

In the present case, plaintiff's complaint alleges only gross negligence. The second and third counts of the complaint are captioned "gross negligence" and allege that the conduct of Terrian and Hendrickson was so reckless that it demonstrated a substantial lack of concern for whether an injury resulted to the decedent. The complaint is devoid of any allegations of "wanton and wilful misconduct" on the part of Terrian and Hendrickson. For this reason, summary disposition was properly granted pursuant to MCR 2.116(C)(7) and 2.116(C)(8).[3]

We reject plaintiff's argument that the terms "gross negligence" and "wanton and wilful misconduct" are synonymous. As defined by statute, wanton and wilful misconduct is a tort for which the mens rea is greater than the reckless "substantial lack of concern" that is sufficient for gross negligence.

Affirmed.

WEAVER, J., concurred.

McDONALD, J. *(dissenting)*. I would reverse the grant of summary disposition in favor of the individual defendants J. Terrian, M.D., and Rose Hendrickson, R.N., and hold there is a question of fact whether those defendants are guilty of wilful and wanton misconduct.

I agree with the majority's position that to assert a valid claim against those defendants, plaintiff must show wilful and wanton misconduct

---

[3] Motions for summary disposition based on governmental immunity technically should be brought under MCR 2.116(C)(7). However, depending upon whether the motion challenges the legal sufficiency of the complaint alone or the factual support upon which it relies, an analysis of the standards applicable to motions brought under either MCR 2.116(C)(8) or 2.116(C)(10) is necessary. See *Markis v Grosse Pointe Park,* 180 Mich App 545, 551-552; 448 NW2d 352 (1989).

and that "wilful and wanton misconduct" is properly defined as "such indifference to whether harm will result as to be the equivalent of a willingness that it does." *Burnett v City of Adrian,* 414 Mich 448, 455; 326 NW2d 810 (1982).

Count II of plaintiff's complaint alleges, in part, that defendant Terrian failed to:

> (c) Pay any heed whatsoever to the radiology report where it was suggested that the plaintiff's decedent suffered from a rounded density in the left mid lung with central lucency with the radiologist's advice that further follow-up evaluation was necessary.
>
> * * *
>
> (e) Inform the plaintiff's decedent that immediate medical follow-up and attention was required as a result of an interpretation given an x-ray taken 9/23/87.
>
> 4. The conduct referred to in the preceding paragraph is conduct that is so reckless that it demonstrates a substantial lack of concern for whether an injury resulted to the plaintiff's decedent.

Contrary to the majority's conclusion, I believe plaintiff's allegations pleaded a cause of action for "wilful and wanton misconduct" sufficient to avoid dismissal under MCR 2.116(C)(7) and (8).

I also believe plaintiff presented sufficient factual support to withstand a motion for summary disposition under MCR 2.116(C)(10). Defendant Terrian contends no physician-patient relationship existed with plaintiff. Throughout his deposition, both he and his attorney insisted on referring to the decedent as a "client" and himself as a "service provider." Yet, Terrian admits he was the only person in the health department with the authority to determine the decedent's treatment.

Only he could order x-rays or prescribe medication for a person in the decedent's situation. There being sufficient evidence indicating a physician-patient relationship, I would find the trial court's finding to the contrary clearly erroneous.

This case is not about misreading an x-ray report. No one disagrees with Terrian's conclusion that the x-ray report was negative for tuberculosis. Instead, the crux of this suit is whether he intentionally failed to share with the decedent the x-ray report's finding of a left mid lung rounded density with a central lucency and its recommendation for a medical follow-up. In his deposition, Terrian claimed any duty he owed to the decedent was confined to a determination whether the x-ray was positive or negative for tuberculosis. He concedes the density found by the radiologist had medical significance and could indicate cancer of the lung. He acknowledges he read the portions of the x-ray report that indicated the presence of the mass and recommended further follow-up, but he did not believe the law obligated him to disclose the information to the decedent. He was uncertain whether he had a professional obligation to disclose the information. His deposition testimony further indicated his belief that a doctor does not necessarily do service to a person by informing of the presence of cancer, because the information merely results in the prolonging of treatment.

Thus, the evidence indicates he knew the report contained medically significant information about the decedent's health and that he purposely chose not to reveal this information to her. There is also evidence indicating that if he had disclosed the information, the decedent's lung cancer may have been discovered two years earlier. In my opinion this is more than sufficient evidence to enable a jury to find that defendant Terrian's conduct

amounted to "such indifference to whether harm will result as to be the equivalent of a willingness that it does."

I would apply the same analysis to defendant Hendrickson. Hendrickson admitted she worked under the direction of defendant Terrian and administered prescription medication to the decedent. Further, she concedes the radiologist's finding of the density in the left lung and recommendation for further testing was medically significant. Hendrickson's inability to recall whether she discussed the report with the decedent constitutes sufficient evidence for the question whether her conduct was "wilful and wanton misconduct" to go to the jury.

I would reverse the court's order granting summary disposition to defendants Terrian and Hendrickson and order trial on counts II and III of plaintiff's amended complaint.