PALMER v BLOOMFIELD HILLS BOARD OF EDUCATION

Docket No. 92424. Submitted May 6, 1987, at Lansing. Decided September 25, 1987.

Diane Palmer, individually and as next friend of her daughter, Leigh Palmer, brought an action in Oakland Circuit Court against the Bloomfield Hills Board of Education, seeking to have changed the policy of the school board which, with certain exceptions, prohibited her daughter and others in the Lahser High School attendance district from transferring from Lahser High School to Andover High School while permitting students in the attendance district for Andover High School to transfer to Lahser High School. Plaintiff claimed that the policy constituted a denial of equal protection and that the policy should be set aside because certain exceptions to the policy were adopted at a meeting which did not comply with the Open Meetings Act. The trial court, Fred M. Mester, J., found for the defendant, holding that the school board had a rational basis for the policy as implemented and that the adoption of the exceptions at a noncomplying meeting did not impair the rights of the public. Plaintiff appealed.

The Court of Appeals held:

1. Education is not a fundamental right; accordingly, the rational basis test rather than the strict scrutiny test applies. There existed a rational basis for the transfer policy as implemented in that it served to equalize the educational opportunities at the two schools by attempting to keep the number of students at each school approximately the same.

2. Any lack of compliance with the Open Meetings Act at the meeting at which the exceptions were adopted does not provide an adequate basis on which to render the validly adopted remaining portions of the policy null and void.

Affirmed.

REFERENCES

Am Jur 2d, Constitutional Law §§ 750, 751; Schools §§ 46, 219.

Validity, construction, and application of statutes making public proceedings open to the public. 38 ALR3d 1070.

See also the annotations in the Index to Annotations under Constitutional Law and School Boards.

1. CONSTITUTIONAL LAW — FUNDAMENTAL RIGHTS — SCHOOLS — EDUCATION — SCHOOL TRANSFER POLICY — RATIONAL BASIS TEST.

   Education is not a fundamental right under Michigan's Constitution of 1963; accordingly, a challenge to a school board's policy creating school attendance districts and restricting certain transfers between attendance districts on equal protection grounds is judged under the rational basis test rather than the strict scrutiny test.

2. CONSTITUTIONAL LAW — EQUAL PROTECTION — SCHOOLS — EDUCATION — SCHOOL TRANSFER POLICY.

   A school attendance policy which permits the students in the attendance district of one school to transfer to another school but denies the reciprocal right to transfer to the students located in the attendance district of the other school is not violative of equal protection where the policy was adopted to insure that the respective schools remain approximately the same size so that equal educational opportunities could be provided at each school.

3. SCHOOLS — SCHOOL BOARDS — OPEN MEETINGS ACT.

   A school transfer policy which was adopted at a meeting of the school board which complied with the provisions of the Open Meetings Act is not rendered invalid by reason of the fact that minor exceptions to the general policy were adopted at a meeting which failed to comply with the Open Meetings Act (MCL 15.261 *et seq.*; MSA 4.1800[11] *et seq.*).

*Feikens, Foster, Vander Male & De Nardis, P.C.* (by *Jon Feikens* and *Joseph E. Kozely*), for plaintiff.

*Dickinson, Wright, Moon, Van Dusen & Freeman* (by *James A. D'Agostini* and *Robert A. LaBelle*), for defendant.

Before: BEASLEY, P.J., and DOCTOROFF and P. EDWARDS,* JJ.

PER CURIAM. Plaintiff, Diane Palmer, brought

* Recorder's Court judge, sitting on the Court of Appeals by assignment.

this action in Oakland Circuit Court, alleging, among other counts, that defendant, Bloomfield Hills Board of Education, denied her daughter, Leigh .Palmer, equal protection under the law by prohibiting her enrollment in Andover High School and requiring her to attend the school district's other high school, Lahser High School. Part of the reason for Leigh Palmer's desire to attend Andover was because she wanted to join the school's swim team and practice under a particular coach. The school board's distinct attendance districts and no-transfer policy prevented this from happening.

The trial court found for defendant on all counts, holding that the school board had a rational basis for implementing its no-transfer policy. The court also held that, while the school board may have violated the Michigan Open Meetings Act[1] when it adopted certain exceptions to the no-transfer policy, plaintiff did not fall within the exceptions and the rights of the public were not impaired.

Plaintiff appeals, claiming that education is a fundamental right under the Michigan Constitution of 1963. Plaintiff argues that, because education is a fundamental right, the trial court erred when it applied a rational basis test, rather than strict scrutiny, to decide the equal protection claim. In the alternative, plaintiff claims the trial court erred in finding the no-transfer policy to have a rational basis. Plaintiff's final claim charges error in the trial court's failure to invalidate the no-transfer policy under the Open Meetings Act.

We affirm. Education is not a fundamental right under the Michigan Constitution of 1963, and the

_____

[1] MCL 15.261 *et seq.*; MSA 4.1800(11) *et seq.*

school board's actions pass the rational basis test.[2] Furthermore, we refuse to invalidate the entire no-transfer policy merely because the school board adopted a few specific exceptions, none of which apply to plaintiff, that may have been in violation of the Open Meetings Act.

The Michigan Constitution of 1963 affords the same equal protection rights as the United States Constitution.[3] In *San Antonio Independent School Dist v Rodriguez*,[4] the United States Supreme Court specifically held that education is not a fundamental right:

> Education, of course, is not among the rights afforded explicit protection under our Federal Constitution. Nor do we find any basis for saying it is implicitly so protected. As we have said, the undisputed importance of education will not alone cause this Court to depart from the usual standard for reviewing a State's social and economic legislation.

Two panels of this Court have followed *San Antonio Independent School Dist* and held that education is not a fundamental right under the

---

[2] Before adressing the equal protection issue, we note defendant's claim that plaintiff lacks standing to bring the suit. Defendant raised the standing issue in its closing argument below. Nevertheless, the standing issue is not properly before this Court because defendant did not raise it in a cross-appeal. In *Peisner v Detroit Free Press, Inc,* 421 Mich 125, 129, n 5; 364 NW2d 600 (1984), reh den 421 Mich 1202 (1985), the Supreme Court stated:

> Our appellate procedure is designed to focus the issues on appeal and provide the parties with an opportunity to fully brief and argue *those* issues. This purpose is frustrated by the injection of new issues in the answering brief. Appellees wishing to challenge rulings adverse to them should do so directly by way of a cross-appeal.

[3] *Fox v Employment Security Comm,* 379 Mich 579, 588; 153 NW2d 644 (1967); *Grieb v Alpine Valley Ski Area, Inc,* 155 Mich App 484, 487; 400 NW2d 653 (1986).

[4] 411 US 1, 35; 93 S Ct 1278; 36 L Ed 2d 16 (1973).

Michigan Constitution of 1963.[5] The mere fact that the Michigan Constitution of 1963 mentions education,[6] while the federal constitution does not, provides no justification for abandoning past decisions and holding education to be a fundamental right under Michigan's constitution. The federal constitution ignores education because regulation of education and school is a traditional state function.

Fundamental rights include the right to vote and travel, due process in criminal matters, and the specific guarantees of the Bill of Rights.[7] They do not include the right to education. Absent a fundamental right or a suspect classification, the test of whether a government classification violates constitutional guarantees of equal protection is whether the classification has a rational relationship to a legitimate state purpose.[8]

In the within case, the no-transfer policy served to balance the enrollment between Andover and Lahser, the two high schools. Imbalanced enrollment threatened to interfere with the school district's ability to offer equal educational opportunities at the two high schools. A difference of twenty-six students between the two schools would result in one less teacher and five fewer course sections at the smaller school. With fewer class sections, teachers are forced to teach in their "minor" area, diminishing the quality of instruction. If enrollment at either school dropped below a certain level, it would lose its status as a Class A school for athletic competition.

The facts indicate that Lahser's enrollment

---

[5] *Sutton v Cadillac Area Public Schools,* 117 Mich App 38, 43; 323 NW2d 582 (1982); *East Jackson Public Schools v Michigan,* 133 Mich App 132, 137-138; 348 NW2d 303 (1984).

[6] Const 1963, art 8.

[7] *In re Contempt of Stone,* 154 Mich App 121, 128; 397 NW2d 244 (1986).

[8] *San Antonio School Dist, supra.*

dropped from 1,147 in 1979 to 977 in 1982. During the same period, Andover's student body shrank from 1,204 to 1,118.[9] The corresponding disparity in enrollment grew from five percent to thirteen percent. School board estimates showed Lahser's enrollment shrinking to 929 in 1986, while the size disparity between the schools grew to twenty-six percent. In 1982, Lahser offered twenty-two fewer course sections than Andover. At the same time, Andover offered three classes in the home economics department, while Lahser offered none.

The school board's purpose of achieving balanced enrollment, as well as its concern over the increasing imbalance, was legitimate. The remaining question, then, is whether the school board chose a rational means to accomplish the goal of enrollment balanced to within ten percent. The path chosen by the school board at its October 19, 1982, meeting involved: (1) transferring two subdivisions from the Andover attendance area to the Lahser attendance area; and (2) closing Andover to transfers from Lahser.

Plaintiff's equal protection claim stems from the second measure. The no-transfer policy creates two classes of students, those in the Andover attendance area who can choose to attend either high school, and those in the Lahser area who must attend Lahser. Plaintiff's daughter falls within the latter category.

Despite its creation of different classes of students, the no-transfer policy survives plaintiff's equal protection challenge because it is rationally

[9] Plaintiff argues that the school district failed to count the hearing-impaired students housed at Lahser, creating only the appearance of an enrollment imbalance. This contention lacks merit. Although hearing-impaired students had access to regular classes and activities, the program itself was administered separately with its own teachers and curricula.

related to the legitimate purpose of achieving enrollment balance. Redistricting of the two attendance areas without a closing of transfers to Andover would be ineffective, as the affected students would elect to transfer to Andover. Allowing students to transfer from a slightly larger school, Andover, to a smaller one, Lahser, certainly is a reasonable means to achieve enrollment balance.

Plaintiff also argues that the five-year duration of the no-transfer policy is irrational. Given the exceptions to the policy which allow siblings of former Andover students and students who already were attending Andover when the boundary was changed to transfer to Andover, the five-year duration appears reasonable. Even without the exceptions, it would take four years for the student population of the two schools to turn over. Although there may have been an alternate method of dealing with the enrollment imbalance problem, we will not substitute our judgment for that of the school board where the board chooses a rational method to solve the problem.[10]

Finally, plaintiff asks us to invalidate the no-transfer policy because the school board violated the Open Meetings Act when it adopted several exceptions to the policy. The school board complied with the act when it adopted the policy itself. It would be counterproductive to strike a validly adopted policy because later the school board carved out minor exceptions whose validity was in question because of failure to comply fully with the Open Meetings Act. The school board gave plaintiff adequate notice and opportunity to oppose the no-transfer policy before its original adoption.

Affirmed.

---

[10] *Hiers v Detroit Superintendent of Schools,* 376 Mich 225, 235; 136 NW2d 10 (1965).