FEASTER v PORTAGE PUBLIC SCHOOLS

Docket No. 168752. Submitted January 10, 1995, at Grand Rapids. Decided May 19, 1995, at 9:15 A.M. Leave to appeal sought.

Phillip M. Feaster, for himself and as next friend of Deonte L. Carpenter, brought an action in the Kalamazoo Circuit Court against Portage Public Schools, challenging the constitutionality of a residency policy of the defendant and of the procedure by which Carpenter's enrollment at one of the defendant's schools was rescinded for noncompliance with the residency policy. The policy at issue required the establishment of a legal guardianship for the purpose of providing a suitable home, and not for an educational purpose, in order for a child to be considered a resident of the school district when living in the district with a resident other than the child's parents. Carpenter's mother had executed a power of attorney under which she had delegated to Feaster her powers over Carpenter's care and custody. The court, Philip D. Schaefer, J., granted summary disposition for the defendant. The plaintiff appealed.

The Court of Appeals *held:*

1. The defendant acted within the authority granted under MCL 380.1148; MSA 15.41148 in promulgating the disputed policy. Section 1148 provides that a child whose parents or legal guardians are unable to provide a home for the child and who is placed in a licensed home or in a home of relatives in a school district for the purpose of securing a suitable home for the child, and not for an educational purpose, shall be considered a resident for education purposes of the school district where the home in which the child is living is located. In the absence of any direction in the statute with respect to the determination whether a student is living with a relative for the proper purpose, the defendant's policy represents a permissible attempt to determine residency pursuant to § 1148.

2. Although a free public education is a vitally important service provided by the state, there is no fundamental right to

REFERENCES

Am Jur 2d, Schools §§ 216, 217, 219, 220.

Determination of residence or nonresidence for purpose of fixing tuition fees or the like in public school or college. 83 ALR2d 497.

a free public education under the Michigan Constitution. Because a fundamental right is not involved, the constitutionality of the defendant's policy must be determined under the rational basis test. The classification scheme created by the defendant's policy, i.e., relatives with legal guardianship and relatives without such guardianship, is rationally related to the defendant's duty under MCL 380.1401; MSA 15.41401 to collect tuition for nonresident students and does not violate equal protection.

3. The defendant's policy requires limited guardianship pursuant to MCL 700.424a(1); MSA 27.5424(1)(1) rather than regular guardianship pursuant to MCL 700.424(3); MSA 27.5424(3).

4. The defendant's policy does not violate substantive due process in view of its rational basis.

5. The lack of a hearing or a written statement of facts by the defendant does not violate procedural due process inasmuch as their presence would not have altered the outcome of this case.

Affirmed.

GRIFFIN, J., dissenting, stated that the defendant's residency policy is invalid because it violates MCL 380.1148; MSA 15.41148, which does not require legal guardianship as a condition of residency for a child who is placed in the home of relatives residing in the school district.

1. SCHOOLS — FREE PUBLIC EDUCATION — FUNDAMENTAL RIGHT — CONSTITUTIONAL LAW.

There is no fundamental right to a free public education under the Michigan Constitution.

2. SCHOOLS — PUBLIC SCHOOLS — RESIDENCY — LIMITED GUARDIAN-SHIPS.

A policy under which a public school requires a limited guardianship over a student who lives in the school district with relatives other than the student's parents in order for the student to be considered a resident of the school district not subject to tuition payment does not violate equal protection or substantive due process; the classifications created by such a policy are rationally related to the statutory obligation of the public school to collect tuition for nonresident students (MCL 380.1148, 380.1401; MSA 15.41148, 15.41401).

*Richard Kupferschmidt,* for the plaintiff.

*Miller, Johnson, Snell & Cummiskey, P.L.C.* (by

*Nancy S. Rubino* and *John G. Manske*), for the defendant.

Before: MACKENZIE, P.J., and GRIFFIN and NEFF, JJ.

NEFF, J. Plaintiff Phillip M. Feaster, for himself and as next friend of Deonte Carpenter, appeals as of right from an order of the circuit court granting summary disposition to defendant and dismissing plaintiff's complaint, which challenged defendant's residency requirement. We affirm.

I

The facts in this case are not seriously in dispute. In January 1993, Deonte Carpenter,[1] a fourteen-year-old boy, lived with his mother, Angella Carpenter, in South Carolina. Because Ms. Carpenter felt she could not provide Deonte with a suitable home environment, she executed a power of attorney delegating her powers of care and custody to plaintiff Feaster,[2] Ms. Carpenter's brother, and sent Deonte to live with Feaster, a resident of Portage, Michigan. Feaster then attempted to en-

---

[1] Deonte's name is spelled various ways throughout the pleadings in this case. We choose the spelling found on Angella Carpenter's power of attorney, dated January 6, 1993.

[2] The power of attorney provided as follows:

I [Angella Carpenter] am the mother of Deonte Carpenter (Born 3-6-79). By signing this POWER OF ATTORNEY, I am delegating all of my powers regarding the care custody and property of my son, DEONTE CARPENTER, to my Brother, PHILLIP FEASTER . . . . I am delegating these powers to PHILLIP FEASTER so that I can secure a suitable home for my son. I understand that the powers I have delegated do not include the power to consent to marriage or the power to consent to adoption.

This Power of Attorney is executed pursuant to authority in the Michigan Probate Code located at MCLA 700.405; MSA 27A.5405. It is intended to be effective when signed, and shall remain in effect, unless terminated by me, for a period of time not to exceed six (6) months.

roll Deonte in West Middle School, one of defendant's schools.

In response to Feaster's request to enroll Deonte, defendant sent Feaster a January 11, 1993, letter stating that, pursuant to the power of attorney signed by Ms. Carpenter, defendant would permit Deonte to attend West Middle School through March 11, 1993, at which time Feaster would be required to supply documentation indicating that a "more permanent arrangement" had been made.

This letter was based on defendant's policy no. 5118, entitled "Residency of Students." The specific provision on which defendant relied provides:

> A student must be a resident of the District as defined by the then-existing laws of the State of Michigan to be eligible for enrollment. A student may be eligible for residency under any of the following circumstances:
>
> * * *
>
> 4. The student resides with individuals who have legal guardianship as determined by a court of competent jurisdiction. This guardianship must be established for the purpose of providing the student a suitable home and not for an educational purpose.
>
> A student may be initially enrolled pursuant to a valid power of attorney designating a relative of the student as the individual responsible for providing the student with a suitable home. However, the District does not recognize a power of attorney as giving a student permanent residence in the District, and the individual presenting such power of attorney shall be notified that a reasonable period of time will be given to establish the aforementioned legal guardianship.

Despite the January 11, 1993, letter, Feaster believed that the power of attorney was sufficient

to continue Deonte's enrollment. On March 11, 1993, a representative of defendant made telephone contact with Feaster and ultimately extended the deadline for Feaster to obtain the proper documentation by one week. Again, Feaster did nothing.

On March 17, 1993, defendant discontinued Deonte's enrollment at West Middle School. By agreement of the parties, however, Deonte was permitted to complete the 1992-93 school year at the same school.

Plaintiff then filed his complaint, alleging, among other things, that the power of attorney was sufficient to establish Deonte's residency, and that defendant's policy no. 5118(4) denied the constitutional rights of due process and equal protection of the law to what plaintiff termed was the "fundamental right" to a free public school education.

Defendant answered and filed its motion for summary disposition under MCR 2.116(C)(10), arguing that policy no. 5118(4) was created in order to allow defendant to comply with state law requirements that it charge and collect tuition from nonresident pupils. According to defendant, because it did not have the resources to investigate each student, it chose to require legal guardianship as a means of ensuring that the statutory residency conditions were met. This scheme, defendant asserted, passed constitutional muster because education is not a fundamental right, and requiring legal guardianship is rationally related to ensuring residency for the legitimate purpose of collecting tuition from nonresident students. Thus, because plaintiff failed to comply with policy no. 5118(4), defendant argued that it properly dismissed Deonte from the school district and was entitled to judgment as a matter of law.

The circuit court agreed with defendant, holding that because education was not a fundamental right, the constitutionality of defendant's policy no. 5118(4) should be tested under the rational basis test. The court then found the policy rationally related to the collection of tuition from nonresidents, and thus upheld the validity of defendant's residency policy. The court further determined that procedural due process rights were not violated. Accordingly, the trial court granted summary disposition to defendant.

II

Before we consider the constitutionality of defendant's policy no. 5118(4), we must address plaintiff's argument that defendant lacked the authority to promulgate that policy. We find that defendant had the authority to promulgate this rule.

Because this matter involves a question of law, we review de novo the lower court's determination. *Westchester Fire Ins Co v Safeco Ins Co,* 203 Mich App 663, 667; 513 NW2d 212 (1994).

Plaintiff argues that by creating policy no. 5118(4), defendant improperly created its own definition of residency. Plaintiff argues that defendant's residency policy is not consistent with MCL 380.1148; MSA 15.41148, which plaintiff claims defines residency as follows:

Except as provided in section 1711, a child . . . whose parents or legal guardians are unable to provide a home for the child and who is placed in a licensed home or in a home of relatives in the school district for the purpose of securing a suitable home for the child and not for an educational purpose, shall be considered a resident for education purposes of the school district where the home in which the child is living is located. The child shall be admitted to the school in the district.

We disagree. School boards, and thus the districts they represent, have the power to make reasonable regulations for the operation of the public schools within the district. MCL 380.1300; MSA 15.41300; *Durant v State Bd of Ed,* 424 Mich 364, 386; 381 NW2d 662 (1985). MCL 380.1148; MSA 15.41148 provides that a student is a resident if the student is living with a relative for the purposes of securing a suitable home, but not for educational purposes. The statute, however, does not direct how each district is to determine whether a student is living with a relative for the proper purpose. Thus, the statute leaves that determination to the various districts.

Because defendant's policy no. 5118(4) is merely an attempt by defendant to determine students' residency pursuant to MCL 380.1148; MSA 15.41148, we find that the trial court properly found defendant to have acted within its statutory grant of powers in promulgating this policy. See *Snyder v Charlotte Public School Dist,* 421 Mich 517, 528-529; 365 NW2d 151 (1984). Having determined that defendant acted within its statutory authority, we must next determine whether policy no. 5118(4) is constitutional.

III

Plaintiff first challenges the constitutionality of policy no. 5118(4) on the basis that defendant's policy denied Deonte his fundamental right to a free public education, thus denying him equal protection of the laws. We fail to find any constitutional infirmity in defendant's residency policy.

A

In order to determine whether the residency policy at issue is constitutional, we must first determine which constitutional test to apply, the

rational basis test or the strict scrutiny test.[3] See *People v Sleet,* 193 Mich App 604, 605; 484 NW2d 757 (1992).

Plaintiff argues that we should apply the strict scrutiny test, under which defendant's policy no. 5118(4) would only be upheld if defendant demonstrated that its classification scheme was precisely tailored to serve a compelling governmental interest, because, according to plaintiffs, education is a fundamental right under Michigan's Constitution.[4] *Doe v Dep't of Social Services,* 439 Mich 650, 662; 487 NW2d 166 (1992). Plaintiff, recognizing that the United States Supreme Court held in *San Antonio Independent School Dist v Rodriguez,* 411 US 1; 93 S Ct 1278; 36 L Ed 2d 16 (1973), that education is not a fundamental right under the United States Constitution, asserts that education is a fundamental right in Michigan under Const 1963, art 8, § 2, which provides, in part, that "[t]he legislature shall maintain and support a system of free public elementary and secondary schools as defined by law."

There is a conflict in this Court with regard to whether a fundamental right to education exists in Michigan. The majority of panels considering the question have held that, although a free public education is a vitally important service offered by this state, there is no fundamental right to such an education under Michigan's Constitution. See *Palmer v Bloomfield Hills Bd of Ed,* 164 Mich App 573; 417 NW2d 505 (1987); *East Jackson Public Schools v Michigan,* 133 Mich App 132; 348 NW2d 303 (1984); and *Sutton v Cadillac Area Public*

---

[3] There is no question that the requisite state action exists for the purposes of this constitutional analysis because defendant is an agency of the state. *East Jackson Public Schools v Michigan,* 133 Mich App 132, 139; 348 NW2d 303 (1984).

[4] Plaintiff does not argue that Deonte is a member of a suspect classification.

*Schools,* 117 Mich App 38; 323 NW2d 582 (1982)
(opinion by Judge MACKENZIE). The lone case to
the contrary is *Lintz v Alpena Public Schools,* 119
Mich App 32; 325 NW2d 803 (1982), which relied,
without discussion, on Const 1963, art 8, § 2, in
finding that a fundamental right exists.

We find that the better-reasoned approach is
that taken by the panels represented by *Palmer,
supra.* The Michigan Constitution of 1963 has been
held to afford the same equal protection rights as
the United States Constitution. *Doe, supra* at 672;
*Palmer, supra* at 576. As noted above, education is
not a fundamental right under the United States
Constitution. The mere fact that Const 1963, art 8,
mentions education does not alter our decision.
The federal constitution ignores education because
regulation of education traditionally is a state
function. *Palmer, supra.*

Accordingly, we resolve the conflict in this
Court, and determine that, although a free public
education is a vitally important service provided
by this state, there is no fundamental right to
such an education under our constitution. See,
also, *Snyder, supra* at 525-526. Thus, we apply the
rational basis test to determine the validity of
defendant's policy no. 5118(4).

B

Under the rational basis test, we examine defen-
dant's residency policy to determine whether it
creates a classification scheme rationally related to
a legitimate governmental purpose. *Doe, supra* at
662. Further, under this more forgiving test, we do
not determine the wisdom, need, or appropriate-
ness of defendant's residency policy or whether the
classification scheme achieves mathematical equal-
ity; defendant's policy no. 5118(4) is presumed to
be constitutional. *Sleet, supra* at 605-607.

Here, it is not argued that the purpose behind defendant's residency policy is not legitimate. Defendant is required by statute to collect tuition from nonresident students. MCL 380.1401; MSA 15.41401.

The question is whether the means defendant uses to reach its goal of collecting tuition is rationally related to that goal. According to defendant's proofs below, it does not possess the resources to independently determine whether a potential student meets the statutory residency requirements. Thus, defendant chose to rely on guardianship proceedings because the court could direct the Department of Social Services to investigate the child's living situation and decide whether the relative was providing a suitable home and not merely a temporary address within a desirable school district.

We find that classifying nonresidents this way—differentiating between those whose relatives have legal guardianship and those whose relatives do not—is rationally related to the collection of tuition from nonresidents. We find defendant's scheme meets this test because it provides a relatively inexpensive way for defendant to determine whether a student is a resident for statutory purposes. Thus, defendant is able to commit its resources to the primary function of educating children and not to investigating their living arrangements. Also, obtaining legal guardianship, although somewhat more cumbersome than merely obtaining a power of attorney, does not place an onerous burden on the students and their relatives.

c

One aspect of defendant's residency requirement

needs further discussion. As defendant's representatives testified, the purpose behind the residency statute is to allow for a determination of the reasons behind a child's placement within defendant's district. After a review of the statutory guardianship requirements, we conclude that defendant intended to require limited guardianship under MCL 700.424a; MSA 27.5424(1), rather than regular guardianship under MCL 700.424; MSA 27.5424.

For a person to obtain regular guardianship over a minor, the minor's parents must either have had their parental rights terminated or have allowed the minor to reside with another without providing that person with the legal authority for care and maintenance of the minor. MCL 700.424(3); MSA 27.5424(3).

On the other hand, to obtain limited guardianship, the only requirements are that (1) the parent consents to the appointment of a limited guardian, (2) the parent consents to a suspension of parental rights, and (3) the court approves a limited guardianship placement plan agreed to by both the proposed limited guardian and the parent. MCL 700.424a(1); MSA 27.5424(1)(1).

We conclude that obtaining limited guardianship is the procedure on which defendant intended to rely. The limited guardianship prerequisites more accurately reflect the circumstances in which students such as Deonte are involved. Accordingly, we construe defendant's policy no. 5118(4) in accordance with defendant's intent and find that it requires limited guardianship rather than regular guardianship. See *Attorney General v Lake States Wood Preserving, Inc,* 199 Mich App 149, 155; 501 NW2d 213 (1993), and *In re Marin,* 198 Mich App 560, 564; 499 NW2d 400 (1993).

D

In finding defendant's residency policy to be constitutional, we stress that we are not finding that defendant utilized the best method for determining residency; rather, we merely conclude that the method chosen by defendant meets the rational basis test. Accordingly, we find no equal protection violation in defendant's policy no. 5118(4).

IV

Plaintiff also challenges defendant's residency policy on grounds of substantive due process, asserting that defendant's residency policy creates an unconstitutional irrebuttable presumption that a child living with a relative, where legal guardianship has not been established, is not a resident. We find no violation of substantive due process in defendant's residency policy.

Claimed violations of substantive due process require the judiciary to review the government's ability to restrict freedom of action with respect to life, liberty, and property. US Const, Am XIV; Const 1963, art 1, § 17; *Hobbins v Attorney General,* 205 Mich App 194, 210; 518 NW2d 487 (1994), rev'd and remanded on other grounds sub nom *People v Kevorkian,* 447 Mich 436; 527 NW2d 714 (1994).

We test the constitutionality of defendant's residency policy in the context of a substantive due process claim using the rational basis test. See *Katt v Ins Bureau,* 200 Mich App 648, 650; 505 NW2d 37 (1993). For the reasons stated in our discussion of plaintiffs' equal protection claim, we conclude that defendant's residency policy meets the rational basis test.

V

Finally, plaintiff challenges the manner in which Deonte's enrollment was rescinded. Plaintiff argues that, because no formal hearing was held, Deonte's rights to procedural due process were violated.[5] We disagree.

In *Verbison v Auto Club Ins Ass'n*, 201 Mich App 635, 641; 506 NW2d 920 (1993), this Court confirmed that rudimentary procedural due process requires (1) notice, (2) an opportunity to defend, (3) a hearing, and (4) a written, although relatively informal, statement of findings. This Court, however, found no constitutional violation where the plaintiff did not receive a hearing or a written statement of findings. *Id.* The Court concluded that even if the plaintiff received a hearing and a written statement of facts, the outcome in that case would not have been different.

Here, there can be no dispute that plaintiff received notice of defendant's intent to rescind Deonte's enrollment. We also conclude that all of the facts necessary to determine the outcome of this issue were known to both parties. Plaintiff Feaster received written notification on January 11, 1993, that the power of attorney was not sufficient to allow Deonte to be enrolled permanently, and he was contacted by telephone and a letter on March 11, 1993, at which time he was granted an extension of the period within which to supply documentation of a guardianship.

Accordingly, we conclude that, because holding a hearing or requiring a written statement of facts would not have altered the outcome in this case, the lack of these proceedings did not result in a

[5] Plaintiff relies on *Goss v Lopez*, 419 US 565, 573; 95 S Ct 729; 42 L Ed 2d 725 (1975), to claim that a free public education is a property right to which due process protection is afforded.

violation of rights to procedural due process. *Verbison, supra.*

## VI

Because defendant acted within its power in creating policy no. 5118(4), and because that residency policy is constitutional, we find that the trial court properly granted summary disposition to defendant.

Affirmed.

MacKenzie, P.J., concurred.

Griffin, J. *(dissenting)*. I respectfully dissent. I would reverse and hold that the residency rules promulgated by defendant Portage Public Schools conflict with state law and are therefore invalid.

## I

Defendant contends that, in the absence of a court-appointed guardian, Deonte cannot be a resident of its school district for purposes of the School Code, MCL 380.1 *et seq.*; MSA 15.4001 *et seq.* I disagree.

Section 1148 of the School Code, MCL 380.1148; MSA 15.41148, defines residency of students for public school enrollment purposes as follows:

> Except as provided in section 1711, a child placed under the order or direction of a court or child placing agency in a licensed home, *or a child whose parents or legal guardians are unable to provide a home for the child and who is placed in a licensed home or in a home of relatives in the school district* for the purpose of securing a suitable home for the child and not for an educational purpose, shall be considered a resident for education purposes of the school district where the home

in which the child is living is located. *The child
shall be admitted to the school in the district.*
[Emphasis added.]

The above statutory provision clearly provides
that, if a child meets the state-mandated require-
ments for residency, the child "*shall* be considered
a resident for education purposes of the school
district" and "*shall* be admitted to the school in
the district."

It is well established that residency for educa-
tional purposes is not the equivalent of legal domi-
cile. *School Dist No 1, Fractional, of the Twp of
Mancelona v School Dist No 1 of Twp of Custer,*
236 Mich 677, 681-682; 211 NW 60 (1926). Further,
as stated by the Supreme Court in *School Dist No
1,* our school laws are to be liberally construed
consistent with Michigan's public policy of encour-
aging free public education:

> The State endeavors to foster and encourage
> education. It wants every child within its limits to
> have equal opportunity with other children in the
> free privileges of the public schools. And while the
> theory of the school law is that a child is restricted
> to these free privileges to the district in which it
> resides, it is not intended that it must acquire a
> residence in that district in the technical sense of
> the term. In recognition of this policy of the State,
> and the necessities of children for a free education,
> the courts construe the school laws liberally and
> distinguish residence from domicile in its technical
> sense.
> The rule as to what constitutes residence enti-
> tling children to the privileges of public schools is
> well stated in the note to *Commonwealth v School
> Directors of Upper Swatara Twp,* 26 L R A 581:
> "So far as a rule can be deducted from the cases
> upon this subject, it seems to be that a child is
> entitled to the benefit of the public schools in the
> district in which it lives if it has gone there in

good faith for the purpose of acquiring a home and
not for the purpose of taking advantage of school
privileges. But that it will not be permitted to go
into a district chiefly for the purpose of getting
school advantages." [236 Mich 681-682.]

Consistent with *School Dist No 1,* the attorney
general has rendered three opinions on issues of
educational residency under the School Code. In
OAG, 1976, No 5004, p 457 (May 13, 1976), the
attorney general rendered an opinion that applied
*School Dist No 1* and *Shapiro v Ann Arbor School
Dist,* 14 Mich App 738; 165 NW2d 919 (1968), to
three different examples. In the final example, a
father living in Nebraska was unable to provide a
proper home for his child. For this reason, the
child was transferred to his grandparents who
lived in a Michigan school district. Under these
facts, the attorney general opined that the child
was an educational resident of the Michigan school
district in which he was living.

Later, in OAG, 1979, No 5574, p 393 (September
18, 1979), the attorney general expressed an opin-
ion that a child placed with a relative pursuant to
a power of attorney under § 405 of the Revised
Probate Code, MCL 700.405; MSA 27.5405,[1] be-
comes a resident of the school district in which the
relative resides as long as the purpose of the
placement was to secure a suitable home. How-
ever, if the student was placed with a relative not
for the purpose of securing a suitable home but for
educational purposes, the child would not become
a resident of the school district.

Finally, in OAG, 1981, No 5925, p 234 (June 23,
1981), the attorney general rendered an opinion
that the determination of residency for school

---

[1] In the present case, the power of attorney regarding Deonte was
written in conformity with this statutory provision.

enrollment purposes is a question of fact. Further, that consistent with the School Code, a school district may require reasonable verification that a child meets the statutory residency requirements.

II

In the present case, defendant school district defends its residency rules as a verification mechanism used to confirm compliance with the residency requirements of the School Code. Plaintiff, on the other hand, alleges that defendant's rules conflict with the School Code by imposing burdens and restrictions on educational residency that are inconsistent with the School Code. I agree with plaintiff.

The School Code does not require the appointment of a legal guardian as a condition of educational residency. On the contrary, the statute defines educational residency as court-ordered placement *or* placement by the parent or guardian in a licensed home or the home of a relative. The district's rule, in effect, rewrites the statute by deleting the later statutory definition of educational residency, which includes "a child placed . . . *in a home of relatives* in the school district for the purpose of securing a suitable home for the child and not for an educational purpose." While the school district would prefer not to make a factual determination regarding the purpose of the placement of a child in the home of a relative, the statutory requirements of educational residency may not be rewritten for the purpose of expediency.

The majority apparently recognizes that a rule requiring the establishment of a legal guardianship and the termination of a parent's parental rights would be exceedingly harsh and unreason-

able. Accordingly, the majority has modified the school district's rules to require the establishment of a "limited guardianship" and the suspension of a parent's parental rights as prerequisites for educational residency. Although defendant's rules require a "legal guardianship as determined by a court of competent jurisdiction," my colleagues conclude that defendant *intended* to require a limited guardianship rather than a regular guardianship. No support for this conclusion is offered other than defendant's announced disdain for making a factual determination required by the School Code regarding the reason for a child's placement with a relative.

The residency rules promulgated by defendant limit enrollment and thereby reduce costs. These rules also violate state law. Students like Deonte Carpenter are denied their right to a free public education by the enforcement of residency rules that are more restrictive than allowed by state law. The School Code, which is to be liberally construed consistent with the public policy of fostering and encouraging free public education, is seriously undermined by defendant's restrictive residency rules.

III

Having found defendant's residency requirements to be invalid, I would encourage defendant to employ the procedure that this Court approved in *In re Curry,* 113 Mich App 821, 826; 318 NW2d 567 (1982):

> Petitioner argues that the respondents' children must be made temporary wards of the court so that the children can receive emergency medical care and enroll in school. We reject this argument.

Although school districts have policies discouraging students from living with persons other than their parents or legal guardians, these policies are aimed at preventing children from living away from their parents and enrolling in school districts strictly for educational reasons. When a child's parents live outside a school district or are unable to care for the child and the parents have chosen to place the child with relatives within a district, school districts may examine each case individually and accept the parents' signatures on forms attesting to the fact that the child's residence in that district with persons other than his or her parents is not solely for the purpose of enrolling the child in school in that district.

I would reverse on the ground that the rules promulgated by defendant violate the School Code. I find it unnecessary to address the constitutional issues raised by plaintiff.