VARGO v SAUER

Docket No. 165179. Submitted April 6, 1995, at Lansing. Decided
    February 9, 1996, at 9:00 A.M. Leave to appeal sought.

Lois Vargo, as personal representative of the estate of Janet
    Vargo, deceased, brought an action in the Ingham Circuit Court
    against Harold Sauer, M.D., and others, seeking damages for
    alleged medical malpractice in the treatment of Janet Vargo.
    Sauer sought summary disposition, contending that he was
    entitled to governmental immunity because he participated in
    the care of Janet Vargo at St. Lawrence Hospital, a private
    hospital, as part of his employment responsibility as an associ-
    ate professor at the Michigan State University College of
    Human Medicine and in conjunction with the MSU/St. Law-
    rence Hospital Family Practice Residency Program. Sauer also
    contended that the plaintiff failed to allege gross negligence.
    The court, Peter D. Houk, J., granted summary disposition for
    Sauer. The plaintiff appealed.

    The Court of Appeals *held:*

    1. Because §§ 7(2) and 7(4) of the governmental tort liability
    act, MCL 691.1407(2),(4); MSA 3.996(107)(2),(4), do not create
    suspect classifications or impinge upon the exercise of funda-
    mental rights, which would subject the statute to strict or
    intermediate scrutiny under the Equal Protection Clause of the
    state or federal constitution, the Court of Appeals must apply a
    rational basis test to those sections of the act.

    2. Section 7(4) clearly provides that those employees of a
    hospital owned or operated by a governmental agency are
    excepted from the broad grant of immunity bestowed on other
    governmental employees in § 7(2). St. Lawrence Hospital is not
    owned or operated by Michigan State University. Therefore,
    the unambiguous grant of immunity in § 7(2) applies to Dr.
    Sauer as long as he satisfies the three requirements set forth in
    subsections 7(2)(a),(b), and (c).

    3. Under a rational basis test, the distinction created by

REFERENCES

Am Jur 2d, Hospitals §§ 2, 20, 24.
See ALR Index under Equal Protection of Law; Hospitals; Privileges
    and Immunities.

§§ 7(2) and 7(4) between governmental employees who are university professors working at government-owned hospitals and university professors working at private hospitals passes constitutional muster. The statutory scheme is related to a legitimate governmental purpose. Therefore, governmental employees working at private hospitals as part of their governmental function who have no input or control regarding hospital operations cannot be sued for malpractice occurring at the private hospital.

4. The trial court did not clearly err in finding that training medical residents at St. Lawrence Hospital was part of the governmental function of the MSU College of Human Medicine under subsection 7(2)(a).

5. Sauer was acting within the scope of his employment and furthering a governmental function when the alleged malpractice occurred. The trial court did not err in finding that Sauer was a governmental employee engaged in the exercise of a governmental function and that his conduct did not amount to gross negligence that was the proximate cause of the decedent's death.

6. The trial court properly granted summary disposition for Sauer.

Affirmed.

J.R. ERNST, J., dissenting, stated that although Sauer is immune from tort liability for alleged medical malpractice arising out of his employment as a member of the faculty of the Michigan State University College of Human Medicine, joint ventures, partnerships, and other cooperative activities between a governmental agency and one or more nongovernmental entities are not within the definition of a "governmental agency," and have not been afforded a legislative grant of immunity. Therefore, the officers, employees, and other agents of such combined state-private endeavors, when acting on behalf of or in the course of employment therewith, also lack immunity from liability for tortious acts. Here, Sauer provided medical services to the decedent not merely while acting in the course of his employment with Michigan State University, but also while acting as an agent of St. Lawrence Hospital or the MSU/St. Lawrence Hospital Family Practice Residency Program. Summary disposition was premature and the matter should be remanded for further proceedings limited to the plaintiff's claims of medical malpractice arising from Sauer's activities as an agent of St. Lawrence Hospital or the MSU/St. Lawrence Hospital Family Practice Residency Program.

1. GOVERNMENTAL IMMUNITY — TORTS — GOVERNMENTAL EMPLOYEES
— GOVERNMENT-OWNED HOSPITALS — PRIVATE HOSPITALS.

The distinction created by §§ 7(2) and 7(4) of the governmental
tort liability act between governmental employees who are
university professors working at government-owned hospitals
and university professors working at private hospitals is ration-
ally related to a legitimate governmental purpose and does not
violate equal protection guarantees (US Const, Am XIV; Const
1963, art 1, § 2; MCL 691.1407[2],[4]; MSA 3.996[107][2],[4]).

2. GOVERNMENTAL IMMUNITY — GOVERNMENTAL FUNCTIONS — TRAIN-
ING MEDICAL RESIDENTS.

The training of medical residents at a private hospital is part of
the governmental function of the Michigan State University
College of Human Medicine under subsection 7(2)(a) of the
governmental tort liability act (MCL 691.1407[2][a]; MSA
3.996[107][2][a]).

*Thurswell, Chayet & Weiner* (by *Kevin J. Cox*
and *Tammy J. Reiss*), for the plaintiff.

*Fraser Trebilcock Davis & Foster, P.C.* (by *Brett
J. Bean* and *Kathleen E. Kane*), for Harold Sauer.

Before: CORRIGAN, P.J., and MARKEY and J. R.
ERNST,* JJ.

MARKEY, J. Plaintiff appeals as of right from the
trial court's order summarily dismissing defendant
Harold Sauer, M.D., from this medical malpractice
action on the basis of the governmental immunity
privilege set forth in MCL 691.1407(2); MSA
3.996(107)(2). We affirm.

Sauer is an obstetrician, gynecologist, and
teacher employed by the Michigan State Univer-
sity College of Human Medicine as an associate
professor in the Department of Obstetrics, Gyne-
cology, and Reproductive Biology. In this capacity,
Sauer is compensated entirely by MSU, he teaches
medical students and residents, he provides clini-

---

* Circuit judge, sitting on the Court of Appeals by assignment.

cal care at the MSU Clinical Center, and he provides inpatient medical care at St. Lawrence Hospital in conjunction with the MSU/St. Lawrence Hospital Family Practice Residency Program. In July 1990, plaintiff's decedent, Janet Vargo, then pregnant, went to St. Lawrence Hospital complaining of shortness of breath and a pain in her chest. That evening, after physicians and residents examined Vargo, defendant Dr. James Rawlinson consulted with defendant Sauer, who determined that the fetus was in distress and recommended an emergency Caesarean section delivery. The delivery was successful and Vargo gave birth to a healthy boy; soon thereafter, however, Janet Vargo suffered heart failure, lapsed into a coma, and died.

Sauer filed his motion for summary disposition pursuant to MCR 2.116(C)(7) and (8). According to Sauer, he participated in Janet Vargo's care as part of his employment with MSU and his responsibility to teach MSU residents, so he is immune from tort liability except with respect to gross negligence. MCL 691.1407; MSA 3.996(107). Also, Sauer asserted that plaintiff's allegations of gross negligence failed to establish conduct so reckless as to show a substantial lack of concern for whether an injury resulted, MCL 691.1407(2)(c); MSA 3.996(107)(2)(c), and, therefore, plaintiff failed to state a claim upon which relief could be granted. The trial court reluctantly granted Sauer's motion for summary disposition upon finding that Sauer was a governmental employee. That finding was based on the fact that he worked for MSU and was acting within the scope of his employment when he examined and operated on Janet Vargo because residents under Sauer's tutelage were involved in this case and, as part of his employment, Sauer must maintain his medical

skills as well as teach residents. The court also found that because plaintiff failed to allege facts amounting to gross negligence and no proprietary function was involved, Sauer was entitled to summary disposition pursuant to MCR 2.116(C)(10).[1] Plaintiff appeals, and we affirm.

I

For the first time, plaintiff challenges the constitutionality of § 7 of the governmental tort liability act, MCL 691.1407; MSA 3.996(107), claiming that it violates equal protection guarantees because it fails to treat all university-employed physicians in Michigan in a like manner with respect to governmental immunity. Issues raised for the first time on appeal, including constitutional challenges, are not ordinarily subject to appellate review. *Michigan Up & Out Of Poverty Now Coalition v Michigan,* 210 Mich App 162, 167; 533 NW2d 339 (1995). However, because plaintiff raises an issue of first impression in Michigan, we will address this issue.

Sections 7(2) and 7(4) of the governmental tort liability act delineate who is entitled to receive governmental immunity from tort liability and what hospitals are excepted from this grant of immunity, respectively:

---

[1] Notably, the trial court also stated in dicta that it was concerned about unfair legislatively created distinctions with respect to governmental immunity. For example, the court stated that under MCL 691.1407(4); MSA 3.996(107)(4), which excludes from immunity a government-owned hospital or medical care facility and its employees, a person injured at the University of Michigan Hospital could have knowingly submitted to having residents examine him, and he would be permitted to sue in tort for any damages sustained during the course of treatment. The same person admitted into a private hospital such as St. Lawrence, however, may not expect to be examined by MSU residents and teachers and could not sue for the same damages. The trial court stated: "I think this is an area that the Legislature has, frankly, created the opportunity for unfair treatment. . . . [I]f there's going to be governmental immunity, it should be for persons who are similarly situated."

(2) Except as otherwise provided in this section, and without regard to the discretionary or ministerial nature of the conduct in question, each officer and employee of a governmental agency, each volunteer acting on behalf of a governmental agency, and each member of a board, council, commission, or statutorily created task force of a governmental agency shall be immune from tort liability for injuries to persons or damages to property caused by the officer, employee, or member while in the course of employment or service or volunteer while acting on behalf of a governmental agency if all of the following are met:

(a) The officer, employee, member, or volunteer is acting or reasonably believes he or she is acting within the scope of his or her authority.

(b) The governmental agency is engaged in the exercise or discharge of a governmental function.

(c) The officer's, employee's, member's, or volunteer's conduct does not amount to gross negligence that is the proximate cause of the injury or damage. As used in this subdivision, "gross negligence" means conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results.

*   *   *

(4) This act does not grant immunity to a governmental agency with respect to the ownership or operation of a hospital or county medical care facility or to the agents or employees of such hospital or county medical care facility. [MCL 691.1407(2), (4); MSA 3.996(107)(2), (4).]

Statutes are presumably constitutional and should be so construed unless their unconstitutionality is clearly apparent. *Caterpillar, Inc v Dep't of Treasury,* 440 Mich 400, 413; 488 NW2d 182 (1992); *Michigan Soft Drink Ass'n v Dep't of Treasury,* 206 Mich App 392, 401; 522 NW2d 643 (1994). Every reasonable presumption must be viewed in favor of constitutionality. *Petrus v Dic-*

*kinson Co Bd of Comm'rs,* 184 Mich App 282, 293; 457 NW2d 359 (1990). Under the state and federal constitutions, the Equal Protection Clause requires that persons in similar circumstances be treated alike. US Const, Am XIV; Const 1963, art 1, § 2; *Frame v Nehls,* 208 Mich App 412, 415; 528 NW2d 773 (1995). The type of classification and the nature of the interest affected will determine, however, the level of scrutiny that this Court must apply in evaluating plaintiff's equal protection challenge. *Id.* Because the statute does *not* create suspect classifications or impinge upon the exercise of fundamental rights, which would subject the statute to strict or intermediate scrutiny under the Equal Protection Clause of the Michigan or the United States Constitution, we must apply a rational basis test to the immunity statute. *Doe v Dep't of Social Services,* 439 Mich 650, 662; 487 NW2d 166 (1992). We will uphold the statute as constitutional as long as the classification is rationally related to a legitimate governmental purpose. *Id.; Feaster v Portage Public Schools,* 210 Mich App 643, 651; 534 NW2d 242 (1995). The constitution " 'is offended only if the classification rests on grounds wholly irrelevant to the achievement of the [legislative] objective.' " *Bissell v Kommareddi,* 202 Mich App 578, 580; 509 NW2d 542 (1993), quoting *McGowan v Maryland,* 366 US 420, 425-426; 81 S Ct 1101; 6 L Ed 2d 393 (1961).

At the outset, we recognize that judicial construction of a statute is neither necessary nor permitted where the statutory language is clear and unambiguous. *Skybolt Partnership v City of Flint,* 205 Mich App 597, 602; 517 NW2d 838 (1994). The Legislature is also presumed to intend the meaning plainly expressed in a statute. *Id.* Further, while the grant of governmental immunity is broad, any exceptions to that grant of

immunity are narrowly construed. *Wade v Dep't of Corrections,* 439 Mich 158, 166; 483 NW2d 26 (1992).

With regard to the public hospital exception to governmental immunity contained in § 7(4), we believe that the statutory language is clear: those *employees* of a hospital owned or operated by a governmental agency are excepted from the broad grant of immunity bestowed on other governmental employees in § 7(2). St. Lawrence Hospital is not owned or operated by MSU; consequently, the equally unambiguous grant of immunity in § 7(2) applies to Sauer, as long as Sauer satisfies the three requirements set forth in subsections 7(2)(a), (b), and (c).

Plaintiff argues that the statute creates two classes of state university-employed physicians and treats them in a disparate fashion. According to plaintiff, under § 7(4), University of Michigan (U of M) physicians teaching and working at the University of Michigan Hospital are not entitled to immunity for medical malpractice, while Michigan State University (MSU) physicians teaching and working at private hospitals (in the absence of a university-run hospital offering inpatient, overnight care) are immune from tort liability. We agree that teaching physicians employed by U of M and MSU are both serving the same governmental function: teaching the human sciences to medical students, as authorized by their respective enabling statutes.[2] Nothing in the legislative analysis of 1986 PA 175, which enacted the hospital exception to governmental immunity in § 7(4), explains the rationale behind this exception. This Court has stated that § 7(4) was adopted to rectify the inequity noted in *Hyde v Univ of Michigan Bd of*

[2] See MCL 390.2; MSA 15.902, MCL 390.8; MSA 15.908, MCL 390.101; MSA 15.1121, MCL 390.661; MSA 15.1104(1).

*Regents,* 426 Mich 223, 244-246; 393 NW2d 847 (1986), i.e., that persons injured by identical conduct in public and private facilities had different rights of recovery. *Jamieson v Luce-Mackinac-Alger-Schoolcraft Dist Health Dep't,* 198 Mich App 103, 111-112; 497 NW2d 551 (1993). Plaintiff's challenge to § 7, however, focuses on the other half of this equation: the party against whom recovery can be pursued.

Under a rational basis test, we believe that the distinction created by §§ 7(2) and 7(4) between governmental employees who are university professors working at government-owned hospitals and university professors working at private hospitals passes constitutional muster. It is not our function to determine the wisdom, need, or appropriateness of the hospital exception in § 7(4) in conducting this inquiry. Thus, although we recognize the arguably inequitable distinction pointed out by plaintiff, the statutory scheme is nonetheless rationally related to a legitimate governmental purpose: i.e., the state will permit governmental employees to be sued in tort where they presumably have input regarding or control over operations at the government-run hospital where the alleged malpractice occurs. See *Doe, supra; Feaster, supra.* Thus, governmental employees working at private hospitals as part of their governmental function who have no input or control regarding hospital operations cannot be sued for malpractice occurring at the private hospital. Also, extending immunity to physicians under these circumstances encourages medical schools to become involved in providing medical care in their communities when the school does not own or operate its own hospital or medical facility. Because legislation is rational if any state of facts either known or reasonably assumed can support

it, and the existence of inequity in its application does not make it irrational, we believe that MCL 691.1407; MSA 3.996(107) survives the rational basis test and does not violate equal protection guarantees. *Doe, supra; Bissell, supra.*

II

Plaintiff also argues that the trial court erred in granting Sauer statutory immunity under § 7(2) because, first, the administration of medical care is not a governmental function, second, Sauer was not acting within the scope of his employment and engaging in the discharge of a governmental function when the malpractice occurred, and, third, further discovery may have established that MSU was operating a hospital, thereby removing Sauer's cloak of governmental immunity. We disagree.

This Court reviews questions of law de novo. *Westchester Fire Ins Co v Safeco Ins Co,* 203 Mich App 663, 667; 513 NW2d 212 (1994). In deciding motions for summary disposition under MCR 2.116(C)(7) based upon governmental immunity, we must consider all documentary evidence submitted by the parties, accept all well-pleaded allegations as true, and view those allegations most favorably to the nonmoving party to determine whether the defendant is entitled to judgment as a matter of law. To defeat the motion, the plaintiff must allege facts that call into play an exception to governmental immunity. *Wade, supra* at 163.

Under the governmental tort liability act, MSU, Sauer's employer, is a governmental agency. MCL 691.1401(c), (d); MSA 3.996(101)(c), (d); see also Const 1963, art 8, § 4. MCL 390.101; MSA 15.1121 states that MSU "shall provide the inhabitants of this state with the means of acquiring a thorough

knowledge of [various arts and sciences] and to
this end it shall afford such instruction in science,
art and literature as, in the judgment of its gov-
erning body, will promote the object of the institu-
tion." Further, MCL 691.1401(f); MSA 3.996(101)(f)
defines "governmental function" as "an activity
which is expressly or impliedly mandated or au-
thorized by constitution, statute, local charter or
ordinance, or other law." *Ross v Consumers Power
Co (On Rehearing),* 420 Mich 567, 620; 363 NW2d
641 (1984); *Codd v Wayne Co,* 210 Mich App 133,
135; 537 NW2d 453 (1995). Indeed, instructing
medical students in the human sciences is an
activity impliedly mandated by statute. We agree
that a specific statutory provision mandating or
authorizing MSU to educate its medical students
through clinical residencies at private community
hospitals need not exist to satisfy the governmen-
tal function test. See, e.g., *Hyde, supra* at 253.
Thus, the trial court did not clearly err in finding
that training medical residents at St. Lawrence
Hospital was part of the governmental function of
the MSU College of Human Medicine under sub-
section 7(2)(a). See also *Richerson v United States
of America,* unpublished order of the United
States District Court, Eastern District of Michigan,
Southern Division, entered November 13, 1995
(Docket No. 95-CV-70228-DT).

We also agree that Sauer was acting within the
scope of his employment and furthering this gov-
ernmental function, as required by subsection 7(2)
(b), when the alleged malpractice occurred. As a
professor at the MSU College of Human Medicine
and as a physician who has staff privileges at St.
Lawrence Hospital based solely upon his involve-
ment with the MSU/St. Lawrence Hospital Family
Practice Residency Program, Sauer was perform-
ing his duties as a professor of medicine by assist-

ing and instructing the residents and doctors attending to Janet Vargo. Nothing in the record contradicts the conclusion that Sauer was acting within his professorial capacity when called upon to examine Janet Vargo and recommend a course of treatment for her *because* MSU residents were involved in her treatment.[3] Moreover, the record establishes that Sauer was not paid by St. Lawrence Hospital, that patients treated by residents and teaching physicians paid MSU for the services rendered at the private hospital, that Sauer did not have a private obstetrical or gynecological practice outside the MSU College of Human Medicine, and that he was on call for the MSU family practice residents. Given that Sauer's examination of Janet Vargo occurred as a result of his involvement in the MSU/St. Lawrence Hospital Family Practice Residency Program, we believe that the trial court did not err in finding that Sauer, a governmental employee, was engaged in the exercise of a governmental function and his conduct did not amount to gross negligence that was the proximate cause of Janet Vargo's death.[4] Thus, the trial court properly granted Sauer's motion for summary disposition pursuant to MCR 2.116(C)(7) on the basis of governmental immunity under § 7(2).

III

Finally, plaintiff asserts that the trial court erred in granting summary disposition because

---

[3] It is irrelevant that defendant Dr. James Rawlinson, one of the physicians treating Vargo, contacted Sauer and requested a consultation. According to Sauer's uncontroverted testimony in his affidavit, he was on call to St. Lawrence to assist MSU residents who were participating in the family practice residency program and who were assisting in Janet Vargo's care.

[4] The issue whether Sauer was grossly negligent as defined in subsection 7(2)(c) is not disputed here.

further discovery could have shown that MSU was operating a "hospital," as that term is defined in § 7(4). We disagree. Summary disposition is premature if discovery of a disputed issue is incomplete. Summary disposition is appropriate, however, if there is no fair chance that further discovery will result in factual support for the nonmoving party. *Mackey v Dep't of Corrections,* 205 Mich App 330, 333; 517 NW2d 303 (1994). In this case, discovery ended three months before the summary disposition hearing, so summary disposition was not premature. Moreover, even if it were established that a contract existed between MSU and St. Lawrence Hospital creating the residency program or providing that MSU would operate the family practice department at the hospital, Sauer would still be entitled to immunity based on (1) his status as an MSU employee, and (2) our conclusion that a department within a hospital does not constitute a "hospital" or "facility" as defined in subsection 7(4)(b). See *Rambus v Wayne Co General Hosp,* 193 Mich App 268, 273; 483 NW2d 455 (1992), reaffirmed *(On Rehearing),* 197 Mich App 480; 495 NW2d 835 (1992).

Affirmed.

CORRIGAN, P.J., concurred.

J. R. ERNST, J. *(dissenting).* I concur in the opinion of the majority that Harold Sauer is immune from tort liability for alleged medical malpractice arising out of his employment as a member of the faculty of the Michigan State University College of Human Medicine. However, I respectfully suggest that this holding should not be entirely dispositive of the case.

In his brief on appeal, Sauer admits that "he provides inpatient medical care as an employee of

MSU *and* in conjunction with the Michigan State University/St. Lawrence Hospital Family Practice Residency Program" to OB-GYN patients at St. Lawrence Hospital. Sauer further contends that "while providing treatment" to plaintiff's decedent, he "was actively engaged in providing instruction to residents who attended" the decedent.

Dr. Sauer's claim of immunity is wholly predicated upon his employment with the Michigan State University School of Medicine. However, statutory immunity is granted only to the individual who is an "employee of a governmental agency" and who causes injury "while in the course of employment." MCL 691.1407(2); MSA 3.996(107)(2).

"Governmental agency" is defined to mean "the state, political subdivisions, and municipal corporations." MCL 691.1401(d); MSA 3.996(101)(d). Joint ventures, partnerships, and other cooperative activities between a governmental agency and one or more nongovernmental entities are not within the definition of "governmental agency," and have not been afforded a legislative grant of immunity. Consequently, the officers, employees, and other agents of such combined state-private endeavors, when acting on behalf of or in the course of employment therewith, also lack immunity from liability for tortious acts.

It is well established in the law of agency that an agent may concurrently act for two principals. *Adams Mining Co v Senter,* 26 Mich 73 (1872). A physician may be simultaneously an employee of a governmental agency and also an employee or agent of a private entity under contract with the governmental agency. Or, indeed, he may be also the employee or agent of a joint governmental/ private enterprise. Although "the physician may

be an agent of a public hospital, if he also is the
employee or agent of a private entity under con-
tract with the public agency, the physician may
nonetheless be subject to liability in his capacity
as an agent or employee of the private entity
. . . ." *Rambus v Wayne Co General Hosp,* 193
Mich App 268, 273; 483 NW2d 455 (1992), reaf-
firmed *(On Rehearing),* 197 Mich App 480; 495
NW2d 835 (1992).

I am persuaded that we must recognize plain-
tiff's contention that, at the time Sauer provided
medical services to plaintiff's decedent, Sauer was
acting not merely in the course of his employment
with Michigan State University, but also as an
agent of St. Lawrence Hospital or the Michigan
State University/St. Lawrence Hospital Family
Practice Residency Program. Plaintiff did attempt
to raise this issue by her motion for further discov-
ery before the trial court entered its final order
granting summary disposition for defendant Sauer.
A grant of summary disposition "is premature if
granted before discovery on a disputed issue is
complete." *Dep't of Social Services v Aetna Casu-
alty & Surety Co,* 177 Mich App 440, 446; 443
NW2d 420 (1989).

Sauer's admissions appear to establish that he
provided medical services to plaintiff's decedent at
St. Lawrence Hospital, a private institution, in his
capacity as an agent of the Michigan State Univer-
sity/St. Lawrence Hospital Family Practice Resi-
dency Program and while instructing St. Lawrence
Hospital resident physicians.

I would reverse and remand for further proceed-
ings limited to plaintiff's claims of medical mal-
practice arising from Sauer's activities as an agent
of St. Lawrence Hospital or the Michigan State

University/St. Lawrence Hospital Family Practice
Residency Program.