NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 08a0623n.06
Filed: October 16, 2008

No. 07-2462

## UNITED STATES COURT OF APPEALS
### FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| RENE DAVEY, as Next Friend of Jared Johnston and Rene Davey, | ) ) ) | |
| Plaintiffs-Appellants, | ) ) | |
| v. | ) ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN |
| ST. JOHN HEALTH; ST. JOHN RIVER DISTRICT HOSPITAL; MARK BRIAN O'BRIAN, D.O.; DAVID HINDY, M.D.; DOWNRIVER COMMUNITY SERVICES, INCORPORATED, | ) ) ) ) ) ) | |
| Defendants-Appellees, | ) ) | |
| and | ) ) | |
| UNITED STATES OF AMERICA, | ) | |
| Defendant-Appellee, | | |

Before: MARTIN, ROGERS, and SUTTON, Circuit Judges.

**ROGERS, Circuit Judge.** In this medical malpractice case, plaintiff Davey alleges that defendants caused injury to her baby because of the negligent failure to deliver her baby by caesarean section and negligent post-delivery treatment. The district court dismissed her suit on the ground that the defendant doctors are entitled to the same statutory freedom from liability for common law torts as federal employees, because their employer (also a defendant) receives certain federal funding. Plaintiffs argue on appeal that one of the doctors is subject to liability because he acted so

egregiously as to exceed the scope of his employment. We conclude that the district court properly determined that the doctor was acting within the scope of his employment. However, because two defendants, the hospital and its owner, are not federally supported, the dismissal of the claims against them must be reversed.

## I.

Plaintiff Rene Davey gave birth to her son, Jared Johnston, under the care of Drs. Hindy and O'Brien, at St. John River District Hospital, which is owned by St. John Health. Davey, acting for herself and her son, brought a medical malpractice action in Michigan state court against five defendants: Drs. O'Brien and Hindy, Downriver Community Services (the employer of the doctors), and the hospital and the hospital's owner. Plaintiffs allege that defendants should have performed a caesarean section to deliver Jared, and that failure to do so caused him serious brain damage. They further allege that Dr. O'Brien was motivated by financial interest in not transferring Davey to another doctor for a caesarean section.

As a recipient of federal funding, Downriver and its employee doctors are protected from liability as if they were federal employees, under the Federally Supported Health Centers Assistance Act of 1992 (FSHCAA). 42 U.S.C. § 233(g). This Act provides that the United States is substituted as defendant in a common law action against employees of federally supported health centers for actions within the scope of their employment, subject to the limits of the Federal Tort Claims Act. *Id.* § 233(c); 28 U.S.C. § 2675(a).

Downriver and its two employee doctors removed the case to the federal district court. The United States Attorney's designee, exercising power delegated by the Attorney General, certified that the doctors were acting within the scope of their employment with Downriver. *See* 42 U.S.C. § 233(c); 28 C.F.R. § 15.4(a). The United States subsequently moved to substitute itself for Downriver and the two doctors under the FSHCAA and to dismiss the claim for lack of subject matter jurisdiction due to plaintiffs' failure to exhaust their administrative remedies under the FTCA. Plaintiffs opposed these motions and moved to remand, arguing that the doctors acted beyond the scope of their employment, rendering them ineligible for federal protection. In the alternative, plaintiffs argued that they should be allowed to conduct discovery on the scope of employment issue.

Meanwhile, plaintiffs requested an entry of default against defendant St. John Health for failure to answer. The private hospital and its owner are not federally protected. These two defendants, St. John Health and St. John River District Hospital, were both represented by the same counsel. That counsel had filed an answer in state court before removal on behalf of the hospital, but not on behalf of St. John Health. St. John Health filed an answer in federal court 110 minutes after plaintiffs requested the entry of default. The clerk of the district court recorded an entry of default seven days later. St. John Health moved to set aside the entry of default, and the district court granted the motion.

The district court subsequently rejected plaintiffs' argument that any of the allegedly tortious conduct fell outside of defendants' scope of employment, and therefore granted the motion of the United States to be substituted for Downriver and the two doctors. The district court denied

plaintiffs' motion to remand and granted the motion of the United States to dismiss plaintiffs'

complaint without prejudice for failure to exhaust administrative remedies.  Plaintiffs appealed.

## II.

We have jurisdiction over this appeal, despite some ambiguity as to whether the district

court's order disposed of all of plaintiffs' claims.

This court has jurisdiction only if the order below was a "final decision[]." 28 U.S.C. § 1291.

The order below states, in relevant part,

> **IT IS ORDERED,** that the motion to substitute the United States for Defendants O'Brien, Hindy, and [Downriver] is **GRANTED;**
>
> **IT IS FURTHER ORDERED,** that Plaintiffs' motion to remand is **DENIED;**
>
> **IT IS FURTHER ORDERED,** that the United States' motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) is **GRANTED;** therefore, Plaintiffs' Complaint is **DISMISSED WITHOUT PREJUDICE.**

The United States' motion to dismiss stated, in relevant part,

> The defendant, United States of America, through its undersigned attorneys, moves this Court pursuant to Federal Rule of Procedure 12(b)(1) to dismiss this action for lack of subject matter jurisdiction, for the reason that Plaintiff failed to exhaust her administrative remedies in that she failed to present an administrative claim for damages to the Department of Health and Human Services prior to bringing this action, as required by the Federal Tort Claims Act, 28 U.S.C. 2675(a).

The district court's order does not specify whether it dismisses the complaint as to the United States only, or as to all defendants. If the order dismissed the complaint as to the United States only, plaintiffs' case against the hospital and its owner remained in the district court, and the order of dismissal is not an appealable final judgment. Fed. R. Civ. Pro. 54(b) ("When . . . multiple parties are involved, the court may direct entry of a final judgment as to . . . fewer than all . . . parties only if the court expressly determines that there is no just reason for delay. Otherwise, any order or other decision, however designated, that adjudicates . . . the rights and liabilities of fewer than all the parties does not end the action as to any of the . . . parties . . . ."). If the order dismissed the complaint as against all defendants, the order is a final order, and we have appellate jurisdiction.

The reasons the United States moved for dismissal do not apply to the hospital and its owner. The United States moved to dismiss the claims against the United States for failure of plaintiffs to exhaust federal administrative remedies. The hospital and its owner could not assert such a defense as plaintiffs are not required to exhaust federal administrative remedies as to defendants not federally protected. Dismissal of the complaint as to the hospital and its owner in response to the United States's motion does not logically make sense.

On the other hand, the district court's order unqualifiedly states that "Plaintiffs' Complaint is Dismissed," and the parties have briefed this appeal on the understanding that the district court's order finally disposed of the case. Moreover, if the district court intended to retain jurisdiction over the claims against the hospital and its owner, its actions make little sense. Since those claims were based on supplemental jurisdiction, the logical action would have been to remand them to state court.

"[W]hen all federal claims have been dismissed before trial, the best course is to remand the state law claims to the state court from which the case was removed." *Thurman v. DaimlerChrysler, Inc.*, 397 F.3d 352, 359 (6th Cir. 2004). The district court's docket shows no action taken between the entry of its order on October 24 and plaintiffs' notice of appeal on November 23.

We therefore read the district court's order as dismissing the claims against all defendants.

**III.**

The district court's application and interpretation of Michigan law with respect to the scope of employment of Dr. O'Brien was correct. The district court properly denied discovery to plaintiffs on this issue, and properly held that plaintiffs alleged no wrongdoing outside the scope of the doctors' employment.

Dr. O'Brien's treatment of Davey was within the scope of his employment with Downriver. As a doctor, Dr. O'Brien was authorized to use labor-inducing drugs to deliver Johnston. "To be within the scope of the employment, conduct must be of the same general nature as that authorized, or incidental to the conduct authorized." Restatement (Second) of Agency § 229(i) (1958) (quoted in *Bryant v. Brannen*, 446 N.W.2d 847, 853 (Mich. Ct. App. 1989)). This criterion clearly applies to a doctor's decision whether or not to obtain a caesarean section for a patient.

In litigation that reached the Michigan Supreme Court, the Michigan courts consistently considered the decision whether or not to deliver by caesarean section to be within the scope of a

doctor's professional duties. *Vargo v. Sauer*, 547 N.W.2d 40, 42, 46 (Mich. Ct. App. 1996), *rev'd*, 576 N.W.2d 656 (Mich. 1998). The dispute that caused the Supreme Court of Michigan to reverse the Court of Appeals related only to the question of scope of employment when there were more than one possible employers for whom the doctor was working at the time, and not all of them warranted immunity. *Vargo*, 576 N.W.2d at 666.

This is not a case where the employee was outside the scope of his employment because he acted "for a purpose of his own not incident to nor connected with the business of his employer." *Freeza v. Schauer Tool & Die Co.*, 33 N.W.2d 799, 800 (Mich. 1948) (delivery truck driver deviated from direct route to visit girlfriend), *overruled in part on other grounds by Moore v. Palmer*, 86 N.W.2d 585 (Mich. 1957). Delivering plaintiff Davey's baby was clearly connected with the business of Downriver, even assuming that Dr. O'Brien had a significant financial motive in not calling in another doctor.

This is also not a case in which the employee should be deemed to have acted outside the scope of his employment because he acted "to gratify some personal animosity or to accomplish some purpose of his own." *Bryant*, 446 N.W.2d at 853. For instance, an employer was held not liable when its employee, while working for employer, shot the plaintiff during a dispute. *Id.* at 855. "The fact that an act is done in an outrageous or abnormal manner has value in indicating that the servant is not actuated by an intent to perform the employer's business." *Id.* at 854 (quoting Restatement (Second) of Agency § 235 cmt. c). The Second Restatement of Agency illustrates this

principle with a hypothetical in which a premises guard prevents a child from trespassing by shooting him, rather than by calling out or otherwise diverting the child. *Id.*

Plaintiffs argue that, as the premises guard's outrageous conduct was outside the scope of the guard's employment, Dr. O'Brien's outrageous negligence (allegedly motivated by greed) ought to render his conduct outside the scope of his employment. However, choosing to continue normal delivery instead of requesting a caesarean section is simply not as "outrageous or abnormal" as use of deadly force. On the contrary, an employer would have authorized an employee physician assisting pregnant patients to make that sort of decision as a regular part of his employment.

Our reasoning does not imply that all performance of medical services by a doctor employed to perform medical services is necessarily conduct within the scope of employment, as the premises guard example above demonstrates. An intentionally tortious or criminal motive, such as in the case of a doctor's deliberately injuring a patient with an overdose, might put a doctor outside the scope of his employment, but there is no indication of such an intentional or criminal motive in this case.

Moreover, this application of Michigan law makes sense, given the general purpose of respondeat superior liability. Many state lawmakers likely would want to hold liable an employer who allows his employees to perform deliveries in a medically negligent manner, particularly if the employer has given the employee a financial incentive to be negligent. Were it not for the protection of the FSHCAA, it is likely that plaintiffs would insist that Dr. O'Brien's actions were within the

scope of his employment, so that they could attempt to recover from his employer as well as from him.

Plaintiffs make a policy argument that "the coffers of the United States should not be opened" for defendants. The cases plaintiffs cite on this point are unavailing—federal courts in other circuits have not allowed defendants the shelter of the federal immunity when they engaged in sexual assault instead of medical treatment, *see e.g. Bodin v. Vagshenian*, 462 F.3d 481 (5th Cir. 2006); *Andrews v. United States*, 732 F.2d 366 (4th Cir. 1984), or when they directly billed patients for their care outside of their service to their covered employer, *Lacey-Echols v. Murphy*, 2003 WL 23571269 (D.N.J. Dec. 17, 2003); *Miller v. Toatley*, 137 F. Supp. 2d 724 (W.D. La. 2000). These situations are not analogous to the facts of the instant case. Moreover, to the degree that plaintiffs argue that defendants should not be granted immunity for their allegedly reprehensible behavior, plaintiffs are arguing against a policy choice made by Congress.

The district court correctly denied plaintiffs the opportunity to delay application of the FSHCAA to defendants by engaging in discovery on the scope of employment issue. "[T]o contest the propriety of substitution, the plaintiff must produce evidence that demonstrates that the employee was not acting in the scope of employment." *Singleton v. United States*, 277 F.3d 864, 871 (6th Cir. 2002).

Plaintiffs presented allegations that Dr. O'Brien was motivated by financial interests instead of ordinary negligence. Even if these allegations are true, the financial motive does not remove his

conduct from the scope of employment, as his conduct still had the purpose of serving his employer's business. Discovery on this issue would not have changed the scope of employment decision; thus, refusing discovery was proper.

The district court properly denied discovery on the scope of employment issue and ruled that Dr. O'Brien was acting within the scope of his employment for purposes of federal immunity.

**IV.**

The district court did not abuse its discretion in setting aside the entry of default against St. John Health. This court reviews the setting aside of an entry of default for abuse of discretion. *O.J. Distrib., Inc. v. Hornell Brewing Co., Inc.*, 340 F.3d 345, 352 (6th Cir. 2003). On the contrary, the district court may have abused its discretion had it failed to set aside the default.

A "district court enjoys considerable latitude under the 'good cause shown' standard of Rule 55(c) to grant a defendant relief from a default entry." *O.J. Distrib.*, 340 F.3d at 353 (further citations omitted). A district court would abuse its discretion in failing to set aside an entry of default if a defendant could show that it had a "meritorious defense" and that "no prejudice would result to the plaintiff if the matter were to go forward." *Id.*

St. John Health filed enough documents to suggest that it could assert a meritorious defense—an argument that none of its agents or employees were involved in the treatment of plaintiffs. In addition, its filing of an answer to the complaint within two hours of the motion for

entry of default suggests that it was prepared to assert a defense on the merits. As the district court noted, it did not have to decide whether St. John would prevail on the defense—it simply had to satisfy itself that the defendant had asserted such a defense.

Plaintiffs' only argument that they were prejudiced by the setting aside of default was that "the delay resulted in advantageous opportunities for collusion among the St. John corporate appellees." Plaintiffs do not explain what this alleged collusion entails, or how it prejudices them in a manner different from ordinary delay. The cases plaintiffs cite on this issue only illustrate that this court has, in two cases, mentioned collusion as something a plaintiff has not shown, while never explaining what degree of "collusion" would prejudice a plaintiff, nor explaining how a plaintiff must show it. *See Berthelsen v. Kane*, 907 F.2d 617, 621 (6th Cir. 1990); *INVST Fin. Group v. Chem-Nuclear Sys.*, 815 F.2d 391, 398 (6th Cir. 1987); *see also Davis v. Musler*, 713 F.2d 907, 916 (2d Cir. 1983). Plaintiffs' citation of these cases, without more, does not support an argument that the setting aside of the entry of default somehow allowed the hospital and its owner to "collude" in a manner prejudicial to plaintiffs.

Because plaintiffs were not prejudiced, and because St. John Health asserted a meritorious defense, it was not an abuse of discretion for the district court to set aside the entry of default. This finding is not intended to imply that this court condones St. John Health's failure to answer until the motion for entry of default was filed. However, the district court did not abuse its discretion in declining to use an entry of default rather than a more "appropriate penalty or sanction" to enforce

filing deadlines. *See Shepard Claims Serv., Inc. v. William Durrah & Assoc.*, 796 F.2d 190, 195 (6th Cir. 1986).

Because the district court did not abuse its discretion in setting aside the entry of default, we do not reach the question of whether the clerk of the district court properly entered the entry of default.

## V.

As discussed above, we interpret the district court's order as ordering dismissal of plaintiffs' claims against all defendants. We vacate the order insofar as it dismisses the claims against St. John Health and St. John River District Hospital, and remand those claims for the district court to consider remanding them to state court.

Remand to the state court appears to be the proper course once the district court dismissed the claims against the defendants protected by the FSHCAA.[1] At that point, the district court had no reason to retain jurisdiction over the supplemental claims against the other defendants.

"When all federal claims are dismissed before trial, the balance of considerations usually will point to . . . remanding [the state law claims] to state court if the action was removed." *Musson*

---

[1]For examples of district courts in other circuits remanding residual claims after FTCA substitution and dismissal, see *Lambert v. Adkins*, 2007 WL 3172794 (W.D. Pa. Oct. 30, 2007); *Robles v. Beaufort Memorial Hosp.*, 482 F. Supp. 2d 700, 706-07 & n.5 (D.S.C. 2007); *Davila v. Wilkinson*, 2005 WL 1203576, at *2 (E.D.N.Y. May 19, 2005)*; Porter v. Hirsch*, 345 F. Supp. 2d 400, 404 (S.D.N.Y. 2004).

*Theatrical, Inc. v. Federal Exp. Corp.*, 89 F.3d 1244, 1254-55 (6th Cir. 1996); *see also Novak v. MetroHealth Med. Ctr.*, 503 F.3d 572, 583 (6th Cir. 2007) (same); *Thurman*, 397 F.3d at 359 (same; "[W]hen all federal claims have been dismissed before trial, the best course is to remand the state law claims to the state court from which the case was removed.").

## VI.

For the foregoing reasons, we affirm the judgment of the district court except with respect to the dismissal of St. John Health and St. John River District Hospital. We reverse the dismissal of the claims against those defendants and remand for further consideration in light of this opinion.